**UNITED STATES of America, Appellee,**

v.

**John Frank RODGERS, Defendant–Appellant.**

**No. 286, Docket 96–1053.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 25, 1996.

Decided Nov. 27, 1996.

Jeremiah Donovan, Old Saybrook, CT, for Defendant–Appellant.

Peter A. Clark, Assistant United States Attorney, District of Connecticut, New Haven, CT (Christopher F. Droney, United States Attorney, New Haven, CT, on the brief), for Appellee.

Before: WALKER and JACOBS, Circuit Judges and CARMAN, Chief Judge.*

WALKER, Circuit Judge:

Defendant John Frank Rodgers claims that the government breached its plea agreement to recommend a downward departure from the guideline range in exchange for Rodgers's assistance in government investigations when (i) an FBI agent encouraged victims of Rodgers's fraud to submit letters to the sentencing court; (ii) the agent misinformed a bankruptcy trustee's attorney, who then informed the sentencing court, of the amount of corporate funds missing due to the fraud and of the results of Rodgers's polygraph examination; and (iii) the government complied with a court order to turn over transcripts of the government's interrogation of Rodgers to plaintiffs in a civil suit. The United States District Court for the District of Connecticut (Ellen Bree Burns, *District Judge*), rejected Rodgers's contention that the government's conduct breached the plea agreement. Rodgers now appeals.

Prior to reaching the merits of Rodgers's claims, we must decide whether the instant appeal is a direct appeal from sentencing or a collateral attack. If it is a collateral attack, then Rodgers's claims may be procedurally barred absent a showing of cause and prejudice.

## BACKGROUND

Between March 1988 and December 1990, John Frank Rodgers, Randy T. Hilgert, and Thomas J. Becker initiated and participated in a fraudulent sale-leaseback scheme involving refurbished Xerox copiers. As part of the scheme, Becker sold copiers through Becker Associates, a brokerage firm owned by Lila, Inc., to various financial institutions. After each sale, Becker leased the copiers on behalf of the investors back to Rhino Copy, a commercial copying firm managed by Rodgers and also owned by Lila, Inc. Investors forwarded payments for the copiers to Hilgert who purported to be a broker for the machines. Those proceeds, in turn, were transferred to Becker Associates and used to make lease payments to investors and to cover the operating costs of Rhino Copy. Although during the course of the scheme over 600 machines were sold to investors, no more than 140 copiers were ever actually delivered to Rhino Copy. After the scheme

---

* The Honorable Gregory W. Carman of the United States Court of International Trade, sitting by designation, became Chief Judge after oral argument.

was uncovered, Lila, Inc. went into bankruptcy.

On January 10, 1991, a grand jury returned a thirty-five count indictment charging Rodgers, Hilgert, and Becker with five counts of mail fraud in violation of 18 U.S.C. § 1341, five counts of wire fraud in violation of 18 U.S.C. § 1343, twenty-four counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and one count of conspiracy to commit those offenses in violation of 18 U.S.C. § 371. On November 4, pursuant to a written plea agreement and supplemental cooperation agreement filed under seal, Rodgers entered a guilty plea to Counts 31 (money laundering) and 35 (conspiracy).

On June 8, 1992, the district court sentenced Rodgers to 121 months imprisonment on Count 31 and 60 months on Count 35 to run concurrently; three years supervised release; and $100 special assessments. Rodgers's adjusted offense level under the sentencing guidelines, after a two-point reduction for acceptance of responsibility, was 35 at criminal history category II, providing for an incarceration range of 188–235 months. The district court departed downward to 121 months based on a motion filed by the government pursuant to U.S.S.G. § 5K1.1, in accordance with the plea agreement. The judgment was entered on June 10, 1992.

On June 16, Rodgers moved, pursuant to Fed.R.Crim.P. 35(c), to reopen the judgment and vacate the sentence on the basis that the government breached the plea agreement in two respects. First, he alleged that FBI Agent Marilyn Lucht initiated a negative letter-writing campaign by informing fraud victims of the upcoming sentencing hearing and directing them to fax these letters to the FBI "24–hours a day, 7 days a week." Second, Rodgers alleged that the agent misinformed Edward DiDonato, an attorney for the bankruptcy trustee of Lila, Inc., of the amount of corporate funds missing due to the fraud and revealed the results of Rodgers's polygraph test to DiDonato who, in turn, relayed the information to the district court in a letter prior to sentencing. On June 17, the district court vacated Rodgers's sentence and scheduled a hearing to review Rodgers's allegations. On August 20, following a hearing, the district court held that none of the agent's acts breached the plea agreement and denied Rodgers's motion. Inexplicably, the district court failed to resentence Rodgers at this time. On September 10, Rodgers filed a notice of appeal from the denial of his motion for a new sentence.

On September 16, the government moved in the district court to reinstate the vacated sentence. On October 28, the district court held a full resentencing hearing and reinstated the original sentence. On October 30, the judgment was entered. Although on November 9 Rodgers sought and was granted a 10–day extension on the time within which to appeal, Rodgers did not appeal this judgment. Meanwhile, on October 29, Rodgers's earlier notice of appeal was withdrawn in this court by stipulation.

On November 25, Rodgers filed in the district court a motion to reopen the October 30 judgment. Rodgers argued at length that this motion to reopen judgment was a collateral appeal pursuant to 28 U.S.C. § 2255, rather than a direct appeal from sentencing. In this motion, he alleged that the government had breached the plea agreement by complying with the order of a court in a related civil proceeding compelling it to release transcripts of Rodgers's conversations with government investigators. In addition, he reasserted his challenge to the accuracy of the FBI agent's calculation of the amount of missing funds and claimed that the FBI agent's misapplication of a polygraph test caused him to fail the examination. On November 28, 1995, the district court denied the motion, holding that the plea agreement did not insulate Rodgers against disclosure of his transcripts pursuant to a valid court order. Rodgers then filed this appeal.

## DISCUSSION

■ To determine whether this appeal can be decided on the merits or is procedurally barred, we must first decide whether the present appeal is a direct appeal from the sentence or an appeal from the district court's denial of Rodgers's November 25 motion to vacate the sentence pursuant to 28

U.S.C. § 2255. This, in turn, requires us to decide whether, on October 28, the sentencing court had jurisdiction to resentence Rodgers despite the pendency of an appeal in this court. If so, there was no timely appeal from that sentencing, and this appeal can only be an appeal from the district court's denial of Rodgers's § 2255 motion. If that is the case, then the merits of Rodgers's claims can only be reached upon a showing by Rodgers of cause and prejudice. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982); *United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir.1995).

## I. *Effect of Notice of Appeal from a Non-appealable Order.*

Rodgers claims that the September 10 notice of appeal automatically divested the district court of jurisdiction to resentence until the appeal was dismissed and the mandate issued on October 29. Because in his view the district court lacked jurisdiction on October 28 to resentence him, Rodgers says that we must remand to the district court for resentencing. We disagree and hold that the district court had jurisdiction on October 28 when it resentenced Rodgers. Our analysis turns on the interplay between the statutory limit on appellate jurisdiction and the rule of divestiture of jurisdiction.

■■■ With limited exceptions not relevant in this case, the jurisdiction of federal courts of appeals is limited to appeals from final decisions of the district courts. 28 U.S.C. § 1291. Final decisions are those that end the litigation on the merits, leaving nothing for the court to do but execute the judgment. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989). In criminal cases, a decision is not final, and therefore not appealable, "until after conviction *and imposition of sentence.*" *Id.* (emphasis added). In this case, Rodgers filed a notice of appeal on September 10. At that time, his prior sentence had been vacated and a new sentence had yet to be imposed. Hence, his September 10 notice of appeal was an appeal from a non-final decision of the district court over which this court had no jurisdiction.

The question in this case is whether filing a notice of appeal from a district court order that is patently nonappealable divested the district court of jurisdiction to resentence.

■■■ As a general matter, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals. *United States v. Rivera*, 844 F.2d 916, 921 (2d Cir.1988) ("Simply put, jurisdiction follows the mandate.").

■■■ The divestiture of jurisdiction rule is, however, not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed "to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir.) (citing *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984)), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989). Hence, its application is guided by concerns of efficiency and is not automatic. *See, e.g., Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir.1996) (district court is not divested of jurisdiction to grant a permanent injunction after an appeal from the district court's order granting a preliminary injunction); *Salerno*, 868 F.2d at 539–40 (frivolous appeal from district court order denying defendant's motion to dismiss based on double jeopardy does not displace district court jurisdiction to proceed to trial).

■■■ Whatever the superficial attractiveness of a per se rule that filing of a notice of appeal automatically divests the district court of jurisdiction as to matters covered by the notice, such a rule is subject to abuse, and our application of the divestiture rule must be faithful to the principle of judicial economy from which it springs. We fail to see any efficiency in allowing a party to halt district

court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on this court the power to do nothing but dismiss the appeal. *See Leonhard v. United States,* 633 F.2d 599, 610–11 (2d Cir. 1980) (notice of appeal from a district court order that was non-final did not divest the jurisdiction of the district court), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *see also Burger King Corp. v. The Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990) (premature notice of appeal from a non-final order of the district court not disposing of all issues in the complaint and countercomplaint does not divest district court of jurisdiction); *SEC v. American Bd. of Trade, Inc.,* 829 F.2d 341, 344 (2d Cir. 1987) (district court had jurisdiction to order a second auction despite notice of appeal from a nonappealable, non-final order), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988). *See generally, United States v. Ferris,* 751 F.2d 436, 440 (1st Cir. 1984) (appeal from nonappealable order does not divest district court of jurisdiction for Speedy Trial Act purposes).

On June 17, the district court vacated Rodgers's sentence and, at the time Rodgers filed the notice of appeal on September 10, it had not been reinstated. Prior to the imposition of a new sentence, Rodgers's case was in the same procedural posture as that of any defendant awaiting sentencing. In short, there was no final order from which to appeal. *See, e.g., United States v. Maldonado,* 996 F.2d 598, 599 (2d Cir.1993). Rodgers's notice of appeal was premature, and therefore, was a nullity. *Griggs,* 459 U.S. at 61, 103 S.Ct. at 403. Accordingly, we hold that Rodgers's September 10 notice of appeal did not divest the district court of jurisdiction to resentence Rodgers on October 28.

II. *Rodgers's Motion to Reopen Is a Collateral Attack.*

 Because the district court had jurisdiction to resentence Rodgers on October 28 and because Rodgers failed to file a timely notice of appeal from the reinstated sentence, we conclude that Rodgers's second motion to reopen judgment was a collateral attack pursuant to 28 U.S.C. § 2255. On October 30,

judgment was entered on Rodgers's sentence. From that date, Rodgers had 10 days within which to appeal. Fed.R.App.P. 4(b). On November 9, the district court granted Rodgers's request for a 10–day extension within which to file a direct appeal. Rodgers, however, failed to file a notice of appeal within the extended period. Because timely filing of a notice of appeal is jurisdictional, *United States v. Ferraro,* 992 F.2d 10, 11 (2d Cir.1993), Rodgers was precluded from pursuing a direct appeal after November 19. Thus, having allowed the time for a direct appeal to lapse, Rodgers's November 25 motion to reopen judgment could only have been a collateral attack pursuant to 28 U.S.C. § 2255. Although Rodgers now disavows the position that he took in the district court—that the November 25 motion was just such a collateral attack—we agree with the district court that Rodgers was correct the first time.

III. *Insufficient Showing of Cause and Prejudice.*

Because Rodgers's appeal is from the district court's denial of a § 2255 motion, Rodgers must demonstrate both cause for his failure to raise on direct appeal the issues he now raises and prejudice flowing therefrom. *Frady,* 456 U.S. at 167–68, 102 S.Ct. at 1594; *Pipitone,* 67 F.3d at 38. Rodgers has shown neither.

 Rodgers bases his showing of cause on an assertion that the time for direct appeal had lapsed before the governmental misconduct allegedly breaching the plea agreement was fully consummated. Rodgers concedes that he was aware of the facts underlying his claims of government misconduct, but argues that one of the alleged acts of misconduct—the government's release of confidential transcripts pursuant to a court's discovery order—had not been completed until after the time for a direct appeal had lapsed, and thus his failure to pursue a direct appeal should be excused. This argument, however, falls short of establishing the requisite showing of cause.

The record plainly indicates that, by the time of the October 28 sentencing hearing, Rodgers was aware of the facts underlying his claims of misconduct including the FBI agent's instigation of the letter-writing campaign by fraud victims and the communica-

tion of information regarding the calculation of missing proceeds and the polygraph test to DiDonato. Rodgers offers no excuse for his failure to pursue these claims on direct appeal. Moreover, at the time of the October 28 sentencing hearing, Rodgers was aware of the government's compliance with the court order to release the transcripts of his conversations with investigators. Even if the government did not actually release the transcripts until after the time for a direct appeal lapsed, Rodgers's showing of cause is insufficient. *See, e.g., Doe v. United States,* 51 F.3d 693, 700 (7th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 205, 133 L.Ed.2d 139 (1995).

 Although we need not reach the question, we note that Rodgers's failure on direct appeal to pursue his claim of government misconduct in violation of the plea agreement did not result in any actual and substantial prejudice. *Frady,* 456 U.S. at 170, 102 S.Ct. at 1595–96. Under the plea agreement, Rodgers agreed to cooperate with government investigators in exchange for a recommendation by the government that the district court depart downward in sentencing. Rodgers's original guideline sentencing level, after a two-point reduction for acceptance of responsibility, was 35 at criminal history category II, calling for an incarceration range of 188–235 months. The government upheld its end of the bargain by filing a motion pursuant to U.S.S.G. § 5K1.1 that recommended that the sentence not exceed the 97–121 month range. The district court, exercising its discretion to sentence Rodgers to 121 months, awarded him a downward departure of 67 months. Rodgers got precisely the reduced sentence for which he had bargained.

Finally, although it is unnecessary to reach the question absent a showing of cause and prejudice, we note that the government misconduct alleged did not breach Rodgers's plea agreement. We interpret plea agreements according to principles of contract law. *United States v. Pollack,* 91 F.3d 331, 334 (2d Cir.1996). In determining whether any particular plea agreement has been breached, we look to the reasonable understanding of the parties, *United States v. Carbone,* 739 F.2d 45, 46 (2d Cir.1984), and resolve any ambiguities in the agreement

against the government. *United States v. Feigenbaum,* 962 F.2d 230, 234 (2d Cir.1992). In this case, the plea agreement was unambiguous. In exchange for the defendant's cooperation, the government, under the agreement, was required only to recommend a downward departure pursuant to U.S.S.G. § 5K1.1. The government fully complied with this obligation. Nothing in the plea agreement prevented the government from presenting relevant aggravating circumstances to the sentencing court, and nothing barred the government from encouraging defrauded victims to voice their views on Rodgers's sentence. Whatever unseemliness appears from Agent Lucht's recommendation that fraud victims fax their letters to the FBI "24–hours a day, 7 days a week" rather than to the district court directly, nothing in the plea agreement prevented such conduct. Moreover, nothing in the agreement restricted Agent Lucht from discussing Rodgers's fraudulent conduct with the attorney for the bankruptcy trustee, and nothing prevented the government from complying with court order discovery. In short, we are not aware of any provision of the plea agreement that was breached in this case.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.