**In re WINIMO REALTY CORP., et al., Debtors.**

**Cibro Petroleum Products, Inc., et al., Debtors in Possession, Plaintiffs,**

**v.**

**City of Albany, and Albany Port District Commission, Defendants.**

**Bankruptcy Nos. 92–B–40026 (CB) to 92–B–40045.**

**Civ.A. No. 01 M 47 (SAS).**

**Adversary No. 9618730A.**

United States District Court, S.D. New York.

Aug. 27, 2001.

---

See also 2001 WL 1313591.

Paul N. Silverstein, Esq., Andrews & Kurth, LLP, New York City, for Plaintiffs.

Jeremy J.O. Harwood, Esq., Healy & Baillie, LLP, New York City, for Albany Port District Commission.

## MEMORANDUM DECISION

SCHEINDLIN, District Judge.

Debtor Cibro Petroleum Products, Inc. ("Cibro") and the Albany Port District Commission ("APDC") are involved in a contract dispute that is currently before the Bankruptcy Court as an adversary proceeding (the "PILOT Adversary Proceeding"). Petitioner APDC now seeks a stay of the Bankruptcy Court's proceedings pending appeal of that court's refusal to compel arbitration of this matter. For the reasons stated below, the Bankruptcy Court lacks jurisdiction to try the PILOT Adversary Proceeding pending APDC's appeal.

## I. BACKGROUND

### A. The Underlying Dispute

This case involves a contract dispute between Cibro and APDC. Cibro is a company formerly engaged in refining, marketing, transporting, and distributing petroleum and asphalt products; it used to operate a refinery at the Port of Albany ("Cibro Facility"). *See* 4/5/01 Affidavit of Defendant's Attorney Jeremy J.O. Harwood, ("Harwood Aff. No. 1") ¶ 4. Cibro filed for Chapter 11 relief on January 3, 1992. *See id.* ¶ 3. It has ceased operations and remains in bankruptcy pending confirmation of a reorganization plan. *See id.* ¶ 4.

The Cibro Facility was leased pursuant to three written leases executed in 1978 and 1979 ("the APDC Leases"). *See id.* ¶ 5. Each lease contained an identical, broadly-worded arbitration provision. *See id.* ¶ 10.

In 1991, Cibro, the City, and APDC entered into an agreement called an "Agreement for Payments in Lieu of Taxes" (the "PILOT Agreement"). *See id.* ¶ 11. Under this agreement, Cibro was to make payments in lieu of City, County and School taxes. *See id.* ¶ 12. The PILOT Agreement makes specific reference to the APDC Leases. *See id.* ¶ 25. In 1994, Cibro discontinued making the payments required under the PILOT Agreement. *See id.* ¶ 13. APDC asserts that the payments called for by the PILOT Agreement are collateral obligations under the APDC Leases and that Cibro's failure to make these payments constitutes a default of

those leases.[1] *See id.* ¶ 14. On July 1, 1998, APDC demanded arbitration of this dispute. *See id.* ¶ 16.

On June 16, 1996, Cibro filed an action against the City challenging the enforceability of the PILOT Agreement and seeking a refund of the payments made under it (the "PILOT Adversary Proceeding"). *See id.* ¶ 20. On March 23, 1998, APDC filed its Amended Intervening Answer to the Complaint.[2] *See* Mandamus Resp. Mem. ¶ 11.

On March 2, 1998, Cibro filed a motion to assume the APDC Leases pursuant to section 365 of the Bankruptcy Code (the "365 Matter"). *See* Harwood Aff. No. 1 ¶ 26. The critical issue in its motion was whether there were any defaults under the Leases. APDC argued that the Leases contained a provision that required Cibro to pay all taxes and that the PILOT Agreement was a tax; Cibro argued that the PILOT Agreement was not a tax. *See* Mandamus Resp. Mem. ¶ 12. APDC opposed this motion and cross-moved on May 15, 1998, seeking, inter alia, a stay and an order compelling arbitration of the "issue of whether there are existing defaults under the APDC Leases . . . ." *See id.* ¶ 27. Cibro then refiled its assumption motion as a motion for partial summary judgment with respect to assumption of the APDC Leases. APDC opposed the motion for partial summary judgment and by cross-

motion dated July 6, 1998, again requested a stay and an order compelling arbitration.[3]

## B. The Bankruptcy Court's Arbitration Decision

On January 27, 1999, the Bankruptcy Court issued its decision on Cibro's motion for summary judgment and APDC's motion to compel arbitration. *See In re Winimo Realty Corp., et al.,* No. 92–B–420026 (Decision of Judge Cornelius Blackshear dated 1/27/99) ("Arbitration Decision"), Ex. 12 to Harwood Aff. No. 1. *First,* the court rejected APDC's contention that it lacked jurisdiction to pass judgement on the underlying breach of contract issues, explaining that a bankruptcy court has "jurisdiction over a core proceeding to enforce a contractual agreement between parties that ha[ve] filed proofs of claim against the debtor's estate." *Id.* at 6 (citations omitted). *Second,* the court denied Cibro's motion for partial summary judgment, finding certain terms of the APDC Leases to be ambiguous. *See id.* at 8–9. *Third,* with respect to APDC's motion to compel arbitration and stay the proceedings, the court found that the APDC Leases indicated that "the parties have agreed to arbitrate," and that "the breach allegation is arbitrable since it does 'touch matters' covered by the agreement." [4] *Id.* at 11. Cib-

---

1. The APDC Leases require that Cibro remain current on its tax-related obligations. *See id.* ¶ 24.

2. APDC's first intervening complaint, filed on October 22, 1997, was dismissed by the Bankruptcy Court on January 30, 1998. *See* Debtors' Response to APDC's Motion for a Writ of Mandamus ("Mandamus Resp. Mem.") ¶ 11.

3. Cibro contended that "[n]owhere did [APDC's] cross motion seek to stay the Pilot Adversary Proceeding." Mandamus Resp. Mem. ¶ 12. Petitioner's July 6, 1998, cross-motion did not explicitly request a stay of the

action. Rather it requested a stay of Cibro's motion and an order directing arbitration of whether there are defaults under the APDC Leases. It also requested "such other and further relief as may be just and proper." Notice of Motion, Ex. 11 to Harwood Aff. No. 1, at 2.

4. The court did not specify which "breach allegation" it was referring to—APDC's allegation that Cibro breached the PILOT Agreement (which Cibro contends is unenforceable) or APDC's allegation that Cibro breached the APDC Leases by failing to make payments under the PILOT Agreement.

ro argued that APDC had waived any right to arbitration, but Judge Blackshear explicitly rejected this contention. *See id.* at 12 ("APDC has not waived its right to enforce the arbitration clause outlined in Article Twelve of the leases."). Nevertheless, the Bankruptcy Court ordered mediation in lieu of arbitration "due to APDC's delay in invoking the arbitration clause." *Id.* at 13.

### C. The Bankruptcy Court's Initial Denial of Arbitration

After the Bankruptcy Court's decision, mediation commenced and continued until November 2000, when APDC reported that the mediation had been unsuccessful. *See* Harwood Aff. No. 1 ¶ 36. At a status conference on November 16, 2000, APDC requested that the court, in line with the Arbitration Decision, now order arbitration of the issues previously subject to mediation. *See id.* ¶ 37. At a hearing on January 24, 2001, the court acknowledged that it had determined that the issues in the proceeding were arbitrable, but refused to enter an order compelling arbitration until after the court had tried the issues. *See* 1/24/01 Transcript, Ex. 15 to Harwood Aff. No. 1, at 36 ("[Y]ou can go to arbitration after I have made my ruling.").

### D. APDC's Motion for a Writ of Mandamus

On April 6, 2001, APDC filed an application for an Order to Show Cause requesting a writ of mandamus directing the Bankruptcy Court to compel arbitration and stay the proceedings pending arbitration. *See* APDC's Combined Application and Memorandum of Law in Support of Its Order to Show Cause for a Writ of Mandamus. At a hearing on April 13, 2001, this Court found that, while the Arbitration Decision had determined that the 365 Mat-

ter is arbitratable, the Bankruptcy Court had not ruled on the arbitrability of the PILOT Adversary Proceeding. *See* 4/13/01 Transcript, Ex. 16 to 7/01 Affidavit of Jeremy J.O. Harwood ("Harwood Aff. No. 2"), at 3–4, 19–20.[5] On April 25, 2001, this Court issued an order remanding the following issues to the Bankruptcy Court: (1) whether "the [PILOT] adversary proceeding is subject to arbitration," and (2) if the proceeding is subject arbitration, "whether such arbitration must proceed prior to the trial of the adversary proceeding." Order on APDC's Motion for Writ of Mandamus to Compel Arbitration ("Remand Order"), Ex. 17 to Harwood Aff. No. 2, at 2.

On May 10, 2001, APDC filed a motion for an order compelling arbitration of the PILOT Adversary Proceeding and staying proceedings pending arbitration. *See* Combined Motion and ADPC's Memorandum of Law in Support of its Request for An Order Compelling Arbitration and Staying an Adversary Proceeding Pending Arbitration ("Remand Motion"), Ex. 19 to Harwood Aff. No. 2. Cibro filed its opposition to this motion on May 25, 2001. *See* Debtors' Memorandum in Opposition to APDC's Motion for an Order Compelling Arbitration and Staying an Adversary Proceeding Pending Arbitration ("Remand Resp."), Ex. 20 to Harwood Aff. No. 2.

### E. The Bankruptcy Court's Remand Decision

On June 28, 2001, the Bankruptcy Court issued a decision denying APDC's request for an order compelling arbitration and a stay pending arbitration. *See* Decision on Remand by District Court to Consider Whether the Issues to be Tried are Arbitrable ("Remand Decision"), Ex. 25 to Harwood Aff. No. 2. The Bankruptcy

---

**5.** The affidavit is dated July, 2001. It was received in chambers on July 18, 2001.

Court made three essential rulings. *First,* the court found that the PILOT Adversary proceeding was a "core proceeding." *Id.* at 4. The court reasoned that settlement of a dispute involving "enforcement of a contractual agreement between parties that filed proofs of claim against the Debtor . . . is essential to the administration of the estate" and that "administering all property of [sic] the bankrupt's possession, is a core bankruptcy function . . . ." *Id.* (quotation marks omitted). *Second,* the court determined that "[t]he underlying purpose of the Bankruptcy Code may adversely be affected by enforcing the arbitration provision." *Id. Third,* the court determined that an adversary proceeding would be a more "expeditious" means of resolving this matter. *Id.* Accordingly, the court ordered the matter scheduled for trial. *See id.*

On July 3, 2001, the Bankruptcy Court issued an order denying a stay pending appeal. *See* Order Denying Stay Pending Appeal ("Stay Order"), Ex. 24 to Harwood Aff. No. 2. On July 13, 2001, APDC filed a Notice of Appeal from the Stay Order pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure. *See* Notice of Appeal ("Notice of Appeal No. 1"), Ex. 26 to Harwood Aff. No. 2. On July 17, 2001, APDC moved this Court for a stay pending appeal. *See* APDC's Combined Emergency Motion and Memorandum of Law in Support of APDC's Request for a Stay Pursuant to Bankruptcy Rule 8005 Pending Appeal from a Decision of the Bankruptcy Court ("Stay Motion").

On August 14, 2001, this Court determined that the Remand Decision did not clearly answer the questions presented on remand. *See* 8/14/01 Order ("Second Remand Order"). While "the Bankruptcy Court clearly answered the second question, holding that in the exercise of its discretion it would decline to compel arbitration, and would proceed immediately with the adversary proceeding," this Court remained unclear "as to the Bankruptcy Court's answer to the first question, 'whether the above-captioned adversary proceeding is arbitrable.'" *Id.* at 1–2 (quoting Remand Order). Therefore, this Court ordered the Bankruptcy Court to "advise this Court in writing, no later than August 17, 2001, as to whether it concludes that disputes arising under the PILOT Agreement are arbitrable." *Id.* at 2.

The Bankruptcy Court responded to the Second Remand Order on August 16, 2001. *See* Memorandum in Response to Order ("Remand Memorandum"). This memorandum is still somewhat confusing. While the first sentence states that "[t]his court has found that disputes under the PILOT Agreement are *not arbitrable* in two prior decisions," the second sentence states that "disputes under the Debtors' Leases, including disputes surrounding payment of the obligations under the PILOT agreements, *are arbitrable* under the Arbitration Act." *Id.* at 2 (emphasis added). Apparently, the Bankruptcy Court failed to distinguish between the issue of arbitrability and the discretionary denial of arbitration, *see* APDC's Supplemental Letter Brief ("APDC's Supp. Letter") at 4 n. 2, for the court later states more clearly that "while disputes under the PILOT Agreement would normally be subject to the Arbitration [Act] . . . this Court has [decided] not to enforce the arbitration clause and to proceed with a trial on the merits," Remand Memorandum at 3. Therefore, while the Bankruptcy Court appears to have concluded that the PILOT Adversary Proceeding falls within the arbitration clause of the APDC Leases and is therefore "arbitrable," it has chosen to exercise its discretion not to enforce that clause.

On August 15, 2001, this Court directed the parties to submit supplemental letter briefs on (1) the "divestiture" issue and (2) the "core"/"non-core" issue. APDC submitted a supplemental letter brief addressing these issues on August 17, 2000, *see* APDC Supp. Letter, and Cibro submitted its supplemental letter brief on August 20, 2001, *see* 8/20/01 Supplemental Letter Brief ("Cibro Supp. Letter"). On August 22, 2001, APDC filed a notice of appeal from the Bankruptcy Court's first Remand Decision and subsequent Remand Memorandum. *See* Notice of Appeal ("Notice of Appeal No. 2").

## II. DISCUSSION

■■■ APDC moves to stay the Bankruptcy Court's proceedings while it appeals the Remand Decision. Pursuant to section 16(a) of the Federal Arbitration Act, APDC has a right to appeal an order denying a petition to compel arbitration or refusing to stay an action pending arbitration. *See PPG Indus., Inc. v. Webster Auto Parts, Inc.,* 128 F.3d 103, 110 (2d Cir.1997); 9 U.S.C. § 16(a)(1)(A)-(B). Pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, APDC may make a motion for a stay of the Bankruptcy Court's order pending appeal of that order to the District Court. *See In re Bogdanovich,* No. 00 Civ. 2266, 2000 WL 1708163, at *3 (S.D.N.Y. Nov. 14, 2000); Fed. R. Bankr.P. 8005.

### A. Jurisdictional Effect of APDC's Notice of Appeal

#### 1. Legal Standard

■■■ APDC filed a notice of appeal on August 22, 2001. *See* Notice of Appeal No. 2. It is well established that the filing of a notice of appeal "confers jurisdiction on the [appellate court] and divests the

[trial] court of control over those aspects of the case involved in the appeal." *United States v. Rodgers,* 101 F.3d 247, 251 (2d Cir.1996) (quotation marks omitted); *see also Satcom Int'l Group v. Orbcomm Int'l Partners,* 55 F.Supp.2d 231, 233 (S.D.N.Y. 1999). This divestiture rule is founded on "concerns of efficiency," *Rodgers,* 101 F.3d at 251, and the desire to protect "the integrity of the appellate process," *Prudential Lines, Inc. v. Am. S.S. Owners Mutual Protection and Indem. Assoc., Inc. (In re Prudential Lines),* 170 B.R. 222, 243 (S.D.N.Y.1994). Its purpose is to avoid "confusion or waste of time from having the same issues before two courts at the same time." *United States v. Salerno,* 868 F.2d 524, 540 (2d Cir.1989) (quotation marks omitted).

■■■ The divestiture rule applies to appeals of bankruptcy proceedings. *See Hagel v. Drummand (In re Hagel),* 184 B.R. 793, 798 (9th Cir. BAP 1995) ("A pending appeal ... divests a bankruptcy court of jurisdiction."); *In re Duratech Industries, Inc.,* 241 B.R. 283, 289 (E.D.N.Y.1999); *In re Prudential Lines,* 170 B.R. at 243. However, it is also well established that "while an appeal of an order is pending, the [bankruptcy] court retains jurisdiction to implement or enforce the order." *In re Hagel,* 184 B.R. at 798 (citing *In re Prudential Lines,* 170 B.R. at 243); *see also In re Bd. of Dir. of Hopewell Int'l Insur. Ltd.,* 258 B.R. 580, 583 (Bankr.S.D.N.Y.2001). "This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review." *Id.* Accordingly, courts have recognized a distinction between actions that "enforce" or "implement" an order, which are permissible, and acts that "expand" or "alter"

that order, which are prohibited.[6] *Id.* Any actions that interfere with the appeal process or decide an issue identical to the one appealed are beyond mere "enforcement" and are therefore impermissible. *See In re Allen–Main Assoc., LP*, 243 B.R. 606, 608 (Bankr.D.Conn.1998).

### 2. Analysis

In this case, the Bankruptcy Court is planning to proceed on the merits of a dispute arising under the PILOT Agreement pending appeal of its order declining to compel arbitration of that dispute. There is disagreement among the circuits as to whether the issues involved in deciding the arbitrability of a dispute are distinct from the merits of that dispute. *Compare Bradford–Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir.1997) (holding that presumption should be against proceeding on the merits during pendency of appeal of order denying arbitration) *with Britton v. Co-op Banking Group*, 916 F.2d 1405, 1411 (9th Cir.1990) (holding that trial court has discretion whether to proceed on the merits after notice of appeal of order denying arbitration has been filed). The Second Circuit has "not squarely addressed this issue." [7] *Satcom*, 55 F.Supp.2d at 236; *see also Intertec Contracting A/S Intertec (Gi-*

*braltara) Ltd. v. Turner Steinder Int'l, S.A.*, No. 98 Civ. 9116, 2001 WL 812224, at *7 n. 4, 2001 U.S. Dist. LEXIS 9950, at *23 n. 4 (S.D.N.Y. July 17, 2001); *In re Application of Smoothline and Great Sino Elec. Ltd.*, No. M 19–375, 2000 WL 1727706, at *1 (S.D.N.Y. Nov.20, 2000).

In a non-bankruptcy context, three Southern District judges have addressed the question of whether an appeal of a decision denying arbitration divests the trial court of jurisdiction to proceed on the merits. *See Intertec Contracting*, 2001 WL 812224, at *7 n. 4, 2001 U.S. Dist. LEXIS 9950, at *23 n. 4; *Cendant Corp. v. Forbes*, 72 F.Supp.2d 341, 342 (S.D.N.Y. 1999); *Satcom*, 55 F.Supp.2d at 236. Each of these courts reached a slightly different conclusion. In *Satcom*, Judge Cote adopted the Seventh Circuit view that "the district court is ordinarily divested of jurisdiction during pendency of an appeal" from an order denying arbitration.[8] *Satcom*, 55 F.Supp.2d at 236. She reasoned that proceedings should be stayed because "the appeal raises the same issues as would further proceedings before [the trial] court on the merits," namely "the proper forum for the resolution of the remaining issues in this case." *Id.* Judge Cote also noted that the application of the dives-

---

**6.** This distinction is particularly important in the context of a Chapter 11 bankruptcy cases, where the court will issue "innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment." *In re Prudential Lines*, 170 B.R. at 244. Permitting the bankruptcy court to enforce orders that are on appeal while prohibiting the court from altering such orders "allows the least disruption of the court's administration of a bankruptcy plan." *Id.*

**7.** In *Weiner v. Gutfreund (In re Salomon Inc. S'holders' Derivative Litig.)*, 68 F.3d 554, 557 (2d Cir.1995), the Second Circuit upheld a district court's decision refusing to stay proceedings pending appeal of the district court's

order declining to compel arbitration. The Second Circuit provided no reason for its decision and did not "indicate whether the basis for its decision was the frivolousness or abusiveness of the appeal or a more general view that proceedings before the [trial court] may continue at the [trial court's] discretion during pendency of an appeal" from an order refusing to compel arbitration. *Satcom*, 55 F.Supp.2d at 236.

**8.** Judge Cote reaffirmed this view in *In re Smoothline*. *See* 2000 WL 1727706, at *1. The Seventh Circuit's position was also adopted in *Baron v. Best Buy Co., Inc.*, 79 F.Supp.2d 1350, 1353 (S.D.Fla.1999).

titure rule would be "entirely in keeping with the principle of judicial economy from which the rule arises" because it avoids the possibility of duplicate proceedings in both the appellate and the trial courts. *Id.* at 236–67. In *Cendant,* Judge Rakoff took a slightly more lenient approach to the question of divestiture, concluding that the trial court has discretion to deny a stay pending appeal "in at least" cases where the appeal is "frivolous or improper or taken for an obviously improper purpose." *Cendant,* 72 F.Supp.2d at 342. While Judge Rakoff recognized that "there may be still other bases for denying the stay, such as considerations of judicial economy, avoidance of conflicting or piecemeal determinations, and the like," he warned that granting a stay is generally the better approach so as not to deprive appellants of "the possibility of having the underlying controversy presented to an arbitrator in the first instance." *Id.* Finally, in *Intertec Contracting,* Judge Haight took the most lenient approach to divestiture. According to Judge Haight, the district court always has "discretion to take action during the pendency of the appeal, so long as it is very carefully exercised and in a distinctly limited fashion." *Intertec Contracting,* 2001 WL 812224, at *7 n. 4, 2001 U.S. Dist. LEXIS 9950, at *23 n. 4 (holding that district court retained jurisdiction to supervise discovery pending appeal of order denying arbitration).

▬▬ While the conclusions of Judges Cote, Rakoff and Haight are instructive, these cases are not precisely on point because each involved non-bankruptcy proceedings, where the issue on appeal was the arbitrability of the entire case. In contrast, the appeal in this case involves the arbitrability of a specific issue—namely, the contract dispute arising under the PILOT Agreement—that is just one element of a larger bankruptcy proceeding. Accordingly, a determination of whether a trial of the PILOT Adversary Proceeding would "interfere with the appellate process," *In re Prudential Lines,* 170 B.R. at 243, or "decide an issue identical to one appealed," *In re Allen–Main Assoc.,* 243 B.R. at 608, requires an examination of the particular facts and circumstances of this case.

One of APDC's arguments on appeal is that the Bankruptcy Court did not have discretion to refuse to compel arbitration. *See* Stay Motion at 23–25. A bankruptcy court has discretion not to enforce an arbitration clause if enforcement of the clause " 'would seriously jeopardize the objectives of the [Bankruptcy] Code.' " *In re U.S. Lines,* 197 F.3d 631, 640 (2d Cir.1999), *cert. denied, Am. S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. U.S. Lines, Inc.,* 529 U.S. 1038, 120 S.Ct. 1532, 146 L.Ed.2d 347 (2000) (quoting *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1161 (3d Cir. 1989)). The Second Circuit has held that, while "not all core bankruptcy proceedings are premised on provisions of the Code that inherently conflict with the Federal Arbitration Act," "core" proceedings are more likely than "non-core" proceedings to create this kind of conflict.[9] *Id.* Thus, on appeal, this Court must review the Bankruptcy Court's determination that the PI-

---

9. APDC correctly notes that the Fifth Circuit has held that discretion is based on the "underlying nature of the proceeding, *i.e.,* whether the proceeding derives exclusively from the provisions of the Bankruptcy Code" rather than the "core"/"non-core" determination. APDC Supp. Letter at 5 (quoting *In re Nat'l* *Gypsum Co.,* 118 F.3d 1056, 1067 (5th Cir. 1997)). Although the Second Circuit decided *In re U.S. Lines* after the Fifth Circuit decided *In re Nat'l Gypsum,* the Second Circuit did not adopt the Fifth Circuit's approach when it had a chance to do so.

LOT Adversary Proceeding was "a core proceeding". Remand Decision at 4.

The "core"/"non-core" issue will also arise in the Bankruptcy Court's trial of the PILOT Adversary Proceeding. The PILOT Agreement is a pre-petition contract. Bankruptcy judges may only resolve a dispute arising under a pre-petition contract if the proceeding is "core". *See In re U.S. Lines,* 197 F.3d at 636; *see also* 28 U.S.C. § 157(b)(1) (giving bankruptcy courts authority to "hear and determine all . . . core proceedings arising under title 11"). Therefore, the Bankruptcy Court's jurisdiction to try the issues involved in the PILOT Adversary Proceeding hinges on its determination that the proceeding is "core." *See* Arbitration Decision at 6 (holding that Bankruptcy Court had "jurisdiction over the present *core* proceeding") (emphasis added). Because the "core"/"non-core" issue will be before this Court on appeal, "[c]ontinuation of proceedings in the [bankruptcy] court . . . creates a risk of inconsistent handling of the case by two tribunals." *Satcom,* 55 F.Supp.2d at 235 (quoting *Bradford–Scott Data,* 128 F.3d at 505).

Application of the divestiture rule is appropriate in this case because trial of the PILOT Adversary Proceeding will involve a key issue identical to one of the issues involved in the order being appealed. *See In re Allen–Main Assoc.,* 243 B.R. at 608; *In re Prudential Lines,* 170 B.R. at 243. Moreover, issuance of a stay will not implicate any of the public policy concerns raised by courts that have cautioned against application of the divestiture rule in similar circumstances. APDC's appeal, regardless of its likelihood of success, does not appear to be a frivolous motion intended to stall litigation. *See Britton,* 916 F.2d at 1412 (noting this concern); *Cendant,* 72 F.Supp.2d at 342 (same). Nor would issuance of a stay result in "conflicting or piecemeal determinations." *Cendant,* 72 F.Supp.2d at 342. To the contrary, staying the Bankruptcy Court's proceedings pending appeal will prevent inconsistent rulings and ensure that judicial resources are not wasted on useless litigation.

## III. CONCLUSION

For the foregoing reasons, APDC's filing of a notice of appeal has divested the Bankruptcy Court of jurisdiction over the PILOT Adversary Proceeding. Because the Bankruptcy Court cannot try that matter until this Court has decided APDC's appeal, it is not necessary to reach the merits of APDC's motion to stay further proceedings on that matter.

SO ORDERED: