**In re Paula LICKMAN, Debtor.**

**Marie Henkel, Plaintiff,**

**v.**

**Paula Lickman, et al., Defendants.**

**Bankruptcy No. 98–02632–6W7.**

**Adversary No. 01–170.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Feb. 6, 2004.

See also 297 B.R. 162.

Gerald J. D'ambrosio, Boca Raton, FL, for Debtor.

## MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO QUASH SUBPOENAS

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

THIS PROCEEDING came on for consideration on the following motions to quash the three subpoenas ("Subpoenas"), which were caused to be issued on or about December 23, 2003, by one of the defendants, Robert Daniels a/k/a Robert Dizak ("Daniels"), to three individuals—Sean Concannon, Yvonne Shepherd, and Cheryl Thompson—requiring them to appear at depositions: (1) Motion to Quash Subpoena and for Sanctions (Doc. No. 245) filed by Sean Concannon; and (2) Emergency Motion of Bankruptcy Court Employees, Yvonne Shepherd and Cheryl Thompson, to Quash Deposition Subpoenas Issued by Robert Daniels, and for Protective Order, on in the Alternative, Motion for Order Requiring Defendant Daniels to Show Cause Why Subpoenas Should not be Quashed (Doc. No. 246) (collectively, "Motions to Quash"). Mr. Daniels filed an Opposition to Mr. Concannon's Motion to Quash (Doc. No. 250). Since the depositions were scheduled for January 16, 2004, this Court entered an Order on January 13, 2004 (Doc. No. 251), temporarily quashing the Subpoenas pending resolution of the Motions to Quash, as well as allowing any interested party to respond by January 23, 2004. Subsequently, on January 20, 2004, Daniels filed his Opposition to Thompson's and Shepherd's Motion to Quash (Doc. No. 254) ("Response").

### Factual Background

As numerous decisions have been reported detailing the lengthy history of this case and adversary proceeding, only a brief recitation of the relevant facts is

necessary.[1] This has been a heavily contested bankruptcy case and proceeding whereby certain individuals have sought to interfere with the orderly administration of the estate by the Chapter 7 trustee. On July 25, 2003, this Court found the defendants liable for actions taken to assert or usurp control over property of the estate in violation of the automatic stay. *In re Lickman,* 297 B.R. 162 (Bankr.M.D.Fla. 2003) ("Decision"). Accordingly, a permanent injunction and judgment was entered in this adversary proceeding against the defendants. The defendants were permanently enjoined from initiating and prosecuting collateral attacks on the trustee's administration of the debtor's estate. Additionally, significant monetary sanctions were also imposed against the defendants to compensate the estate for the harm resulting from their actions. The defendants, including Daniels, appealed the judgment and Decision on or about August 1, 2003 and August 4, 2003 (Doc. Nos. 189, 192, 193 and 198). The appeals are currently pending before the District Court. On November 25, 2003, this Court denied the defendants' motions for a stay pending appeal. *In re Lickman,* 301 B.R. 739 (Bankr.M.D.Fla.2003). Further, District Court Judge Presnell, in his order dated August 4, 2003 (Doc. No. 201 in this adversary proceeding) enjoined the defendants from not only initiating any new action related to estate property but also conditioned any such action upon first obtaining leave from Judge Presnell as well as requiring the defendants to attach copies of his orders to any new filing by the defendants.

During the course of this proceeding, the defendants had attempted, without success, to have former Bankruptcy Judge C. Timothy Corcoran, III recused from this case. *In re Lickman,* 288 B.R. 151 (Bankr.M.D.Fla.2003); *In re Lickman,* 284 B.R. 299 (Bankr.M.D.Fla.2002).[2] Cheryl Thompson was the law clerk to Judge Corcoran and Yvonne Shepherd was Judge Corcoran's judicial assistant at the time the Decision was rendered. At the time the subpoenas were issued, both Thompson and Shepherd were full-time employees of the bankruptcy court. Mr. Concannon is the attorney for the Chapter 7 Trustee.

Daniels' main reason for deposing Thompson and Shepherd is ostensibly to determine if Concannon visited Judge Corcoran's chambers, "assisted" in writing the decisions and made *ex parte* calls to chambers. *See Response,* ¶¶ 6 to 12.

---

1. *In re Lickman,* 301 B.R. 739 (Bankr. M.D.Fla.2003); *In re Lickman,* 2003 WL 21738444 (Bankr.M.D.Fla.2003); *In re Lickman,* 297 B.R. 162 (Bankr.M.D.Fla.2003); *In re Lickman,* 288 B.R. 584 (Bankr.M.D.Fla. 2003); *In re Lickman,* 288 B.R. 291 (Bankr. M.D.Fla.2003); *In re Lickman,* 288 B.R. 151 (Bankr.M.D.Fla.2003); *In re Lickman,* 286 B.R. 821 (Bankr.M.D.Fla.2002); *In re Lickman,* 284 B.R. 299 (Bankr.M.D.Fla.2002); *In re Lickman,* 282 B.R. 709 (Bankr.M.D.Fla. 2002); *In re Lickman,* 273 B.R. 691 (Bankr. M.D.Fla.2002).

2. Even prior to their actions to have Judge Corcoran recused, there has been a pattern of attempts to make other judges recuse themselves from presiding over this case. *See, e.g.,* Docket No. 83 in the main case. In fact, Daniels admits that this is his *modus operandi.* In his Response, ¶ 13, he makes the similar threat to this judge:

> Should this Court decide to quash these subpoenas, I believe it will then be my obligation to immediately bring such egregious action to the 11th Circuit, as to how this Judge suppressed a valid inquiry into unethical and possible criminal conduct. And by the way, your friend "Judge Tim" whose improper conduct you could not uphold fast enough while intentionally ignoring defendants evidence, was not the first judge in which I played a significant role in having removed from the bench—and I rather doubt he will be the last.

*Legal Discussion*

The Motions to Quash present two principal legal issues. First, there is the issue of whether a judicial assistant and a law clerk of a United States Bankruptcy Judge are immune or otherwise protected from compulsory civil process purporting to require their appearance and testimony about their official activities, including their knowledge, if any, of the decision making process of the bankruptcy judge for whom they worked.

The second issue to be decided is whether the "Divestiture Rule" precludes the enforcement or issuance of the Subpoenas as this proceeding is under appeal. For the foregoing reasons, the Court finds on both grounds that the Motions should be granted and the Subpoenas quashed.

**A. *Judicial and Quasi–Judicial Immunity.***

 Judicial and quasi-judicial immunity governs the first issue. Judge Corcoran was a judicial officer duly appointed as a United States Bankruptcy Judge for the judicial branch of the government. It is well settled that judges are absolutely immune from civil liability for their "judicial acts." *Wahl v. McIver*, 773 F.2d 1169, 1172 (11th Cir.1985). "The judicial or quasi-judicial immunity available to federal officers is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable re-

lief." *Moore v. Brewster*, 96 F.3d 1240, 1243–44 (9th Cir.1996) (internal citations omitted). This immunity applies "however erroneous the act may have been, and however injurious in its consequences...." *Id.* The immunity also applies when such judicial acts "are in excess of [their] jurisdiction and are alleged to have been done maliciously or corruptly...." *Wahl*, 773 F.2d at 1172 (quoting *Bradley v. Fisher*, 80 U.S.(13 Wall.) 335, 351, 20 L.Ed. 646 (1871)). The purpose of judicial immunity is

> for benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.... His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir.1988) (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

 Here, Daniels is complaining of decisions rendered by Judge Corcoran and wants to depose his staff and the Trustee's attorney to determine if there was any impropriety surrounding Judge Corcoran's decisions in this case. Clearly, Judge Corcoran was a sitting judge when he rendered his decision.[3] There can be no real dispute that the rendering of his decision was also clearly a "judicial act." [4]

---

**3.** Daniels asserts incorrectly that judicial immunity is lost when a judge is no longer sitting in his official capacity as a judge. Judicial immunity is still accorded a former sitting judge if the complaints against him arise from the judicial acts taken when he was a judge. *Sparks v. Duval County Ranch Co., Inc.*, 588 F.2d 124 (5th Cir.1979)(former judge still cloaked with judicial immunity); *Grove v. Rizzolo*, 441 F.2d 1153 (3d Cir. 1971)(same); *Flanagan v. Shamo*, 111 F.Supp.2d 892 (E.D.Mich.2000)(same).

Here, Daniels is complaining of Judge Corcoran's decision-making process when he rendered his decision as a judge against the defendants in this case. Clearly, both Thompson and Shepherd were employed as his staff at the relevant time.

**4.** Whether an act by a judge is a "judicial" one depends on "whether it is a function normally performed by a judge," and "the expectation of the parties" and "whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362, 98

 The concern for the integrity of the judicial process also extends to those who "perform functions closely associated with the judicial process." *Oliva,* 839 F.2d at 39 (citation omitted). Courts follow the "functional approach" to determine if a person is entitled to immunity. Under this approach, immunity flows from the "nature of the responsibilities of the individual official." *Id.* (citing *Cleavinger v. Saxner,* 474 U.S. 193, 201, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). Indeed, courts have consistently granted absolute immunity to a law clerk serving for a judge. *Oliva,* 839 F.2d at 39–40; *Moore,* 96 F.3d at 1244–45; *Mitchell v. McBryde,* 944 F.2d 229, 230–31 (5th Cir.1991); *Parkinson v. U.S.,* 175 F.Supp.2d. 1233, 1239 (D.Idaho 2001); *Reisner v. Stoller,* 51 F.Supp.2d 430, 444 (S.D.N.Y.1999); *Fariello v. Campbell,* 860 F.Supp. 54, 68 (E.D.N.Y.1994); *In re M.E.S., Inc.,* 148 B.R. at 3; *DeFerro v. Coco,* 719 F.Supp. 379 (E.D.Pa.1989); *Bradley v. U.S.,* 84 Fed.Appx. 492 (6th Cir.2003). The rationale for extending absolute immunity to a law clerk is because "a law clerk is probably the one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function." *Oliva,* 839 F.2d at 40.

 Daniels argues that judicial immunity is irrelevant in discovery. Assuming arguendo that a suit against Judge Corcoran had not been filed, it is still clear that Daniels' defense in his appeal is based on judicial misconduct. The policy behind immunity does not merely extend to suits, it also extends to protection against discovery. If judicial immunity were applicable, then it would be senseless and disruptive to allow for discovery. The Supreme Court has spoken clearly in this area. Until immunity is resolved, discovery shall not be allowed because "inquiries of this kind can be peculiarly disruptive of effective government." *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)(holding the discovery is improper until the court resolves the question of immunity); *See also Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)(citing to *Harlow* ); *Williamson v. U.S. Dept. of Agriculture,* 815 F.2d 368, 382–83 (5th Cir.1987)("the Supreme Court noted that the protection afforded government officials by the doctrines of absolute and qualified immunity would be greatly depreciated if it did not include protection from discovery.... [C]lose control of discovery is essential to the preservation of meaningful official immunity [internal citations omitted]."); *LeClerc v. Webb,* 2003 WL 21026709 (E.D.La. May 2, 2003)(court granted stay of discovery pending determination of immunity). This makes sense, because after all, if a judge cannot be compelled to testify in a case over which he or she presides in regards to her or his decision making, then a disgruntled litigant should not be allowed to circumvent this by compelling the judge's staff to so testify. *In re M.E.S.,*

S.Ct. 1099, 55 L.Ed.2d 331 (1978). Several Circuit Courts have expanded the *Sparkman* analysis. *Ashelman v. Pope,* 793 F.2d 1072, 1075–76 (9th Cir.1986) (listing of cases). The Eleventh Circuit also utilizes these expanded factors. *Harris v. Deveaux,* 780 F.2d 911, 914 (11th Cir.1986). These factors are whether: "(1) the precise act complained of ... is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity." *Id.* Clearly, all factors are easily met. The rendering of a decision in a case then pending before the judge is a normal judicial act. The rendering of a decision typically occurs in chambers and the defendants' dissatisfaction with the judge's decision arose at hearings before him in his official capacity.

*Inc.,* 148 B.R. 1, 3 (D.Puerto Rico 1992) (immunity granted to law clerk and court disallowed compulsion of testimony regarding discussions with judge on pending case). Accordingly, the Subpoena is quashed as to Ms. Thompson.

■■■■■ The next issue to be resolved is whether immunity should be extended as to Ms. Shepherd, a judicial assistant to a federal judge. Factors to be considered when utilizing the functional approach "include the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity." *Fariello,* 860 F.Supp. at 68. In addition to law clerks, other personnel such as court clerks, examiners, bankruptcy trustees, justices of the peace, deposition officers, receivers, arbitrators, commissioners appointed to conduct partition sales have been granted absolute immunity. *U.S. v. Folding Carton Administration Committee,* 121 F.R.D. 69, 71 (N.D.Ill.1988)(listing cases and summarizing extensions of immunity to certain groups). Even clerical employees in the prosecutor's office have been granted absolute immunity with respect to claims arising from their role in the judicial process. *Gill v. Ripley,* 352 Md. 754, 724 A.2d 88, 96–98 (1999).

As summarized by the Court of Appeals of Maryland in *Gill,* with respect to court clerks, courts have used differing analyses but have nonetheless extended immunity to them:

> Some courts have accorded judicial immunity only with discretionary, as opposed to ministerial acts or when the act is required by court order or taken at a judge's direction.... Other courts have looked more at whether the conduct was an integral part of the judicial process, rather than whether it was discretionary or ministerial in nature....Even under

the more restrictive approach, judicial immunity has been applied to court clerks with respect to discretional acts that implement judicial decisions or that are performed at the discretion or supervision of a judge." *Gill,* 724 A.2d at 97 (internal citations omitted).

Ms. Shepherd is a judicial assistant. The "Chambers Handbook for Judges' Law Clerk and Secretaries," Federal Judicial Center (1994), at 1, states that "secretaries assist in the day-to-day conduct of court business." A judicial assistant is often just as privy as a law clerk to a judge's decision, in that she or he may have a hand in the editing and typing of a decision. A secretary or judicial assistant to a judge is an integral part of chambers and the judge is the sole and direct supervisor of his or her work. It is the expectation of any judge or party that such a close employee of his staff be also clothed with the same immunity with respect to any judicial acts.

From a policy perspective, the public will be better served to extend immunity to judicial assistants. Litigants who are dissatisfied with a judge's decisions should not be allowed to circumvent the absolute immunity provided to judges by forcing his or her staff to testify as to the judge's decision making process. Under any standard cited above, this Court can find no principled basis upon which to distinguish the role of a judicial assistant or secretary from that of "court clerks who act under the control and supervision of judges and who perform functions that are integral to the judicial process." *Gill,* 724 A.2d at 97–98.

Accordingly, the Subpoenas as issued to Ms. Thompson and Ms. Shepherd should be quashed as they are clothed with absolute immunity. Additionally, it is appropriate to issue a protective order against

further issuances of subpoenas to them by the defendants.

## B. *The Divestiture Rule Requires That the Subpoenas be Quashed.*

 In the alternative, even if judicial immunity were not applicable, this Court is also under an obligation to quash the Subpoenas pursuant to the "Divesture Rule." The Divestiture Rule states that a "[f]iling of a notice of appeal confers jurisdiction on the appellate court and divests the trial court over those aspects of the case involved in the appeal." *In re Winimo Realty Corp.*, 270 B.R. 99, 106 (S.D.N.Y.2001)(citing *U.S. v. Rodgers*, 101 F.3d 247, 251 (2d Cir.1996) (internal quotation marks omitted)). This rule is to promote "efficiency" and to "protect the integrity of the appellate process." *Id.* Appeals of bankruptcy proceedings are also subject to this rule. *Id.; In re Section 20 Land Group, Ltd.*, 252 B.R. 812, 816–17 (Bankr. M.D.Fla.2000); *In re Strawberry Square Associates*, 152 B.R. 699, 701 (Bankr. E.D.N.Y.1993). Courts distinguish between actions that are taken to "enforce or implement" an order. Such actions are permissible. *Winimo Realty Corp.*, 270 B.R. at 106–07 (citations omitted). On the other hand, any "actions that interfere with the appeal process or decide an issue identical to the one appealed" are impermissible. *Id.* at 106 (citations omitted).

 In this adversary proceeding, the final judgment is under appeal before the district court. The Subpoenas, which were caused to be issued by Daniels, cannot be considered by any stretch of the imagination as an action to implement and enforce the judgment rendered against him and other defendants. In contrast, the Subpoenas would very likely interfere with the appeal process. By seeking to depose the parties, an inference can be drawn that Daniels is attempting to impermissibly add to the record on appeal.[5] Therefore, this Court concludes that it lacked jurisdiction to issue the Subpoenas and accordingly, they should be quashed.

For the reasons recited above, it is

ORDERED:

5. The Motions to Quash also raise the defense of the "vexious" nature of the Subpoenas. While the Court's rulings on alternative grounds make it unnecessary to rule on this issue, the Court notes that given the historical and factual background of this case, these circumstances support the argument that these subpoenas were issued to "harass." Rule 45(c)(3) of the Federal Rules of Civil Procedure (subpoenas may be quashed if it subjects a person to "undue burden"); *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir.2003)(a factor in quashing a subpoena is whether the "subpoena was issued primarily for purposes of harassment. . . ."); *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir.2003)(affirming lower court's decision to quash subpoena "served for the purpose of annoying and harassment. . . ."). The subpoenas also violate the spirit if not the letter of the injunctions that have been entered by both this Court and by the District Judge Presnell. The injunction by this Court prevents the defendants permanently "from taking or prosecuting any actions against the trustee or her counsel . . . to assert dominion and control over property of the estate, or to affect property of the estate." *Lickman*, 297 B.R. at 208. Judge Presnell specifically enjoined the defendants "from filing any action, complaint, or claim for relief against the Trustee or her attorneys, or other claim which amounts to a collateral attack on the orders of the Bankruptcy Court, entered to date, without first obtaining leave of this Court. Any such new action, complaint, or claim for relief related in any way to Lickman's inheritance from Tibby Pfeiffer must be accompanied by (1) a copy of this Order and (2) a copy of the Order (Doc. No. 25) affirming the Bankruptcy Court in Consolidated Case No. 6:02–cv–1492–Orl–31JGG. In addition, each such filing in federal court, state court, or any other forum— must be *preceded* by a Motion for Leave to File addressed to this Court." (p. 16, Doc. No. 201 in Adv. Pro. No. 01–170).

1. The Motions are granted and the Subpoenas are quashed.

2. Ms. Shepherd's and Ms. Thompson's Joint Motion for a protective order is granted.

3. The Court will retain jurisdiction to consider imposing sanctions as well as awarding fees and costs in the event that Daniels attempts to re-issue the Subpoenas.