Thomas DENNEY, R. Thomas Weeks, Norman R. Kirisits, Kathryn M. Kirisits, TD Cody Investments, L.L.C., RTW Investments, L.L.C., NRK Syracuse Investments, L.L.C., DKW Partners, DKW Lockport Investors, Inc., Donald A. Destefano, Patricia J. Destefano, DD Tiffany Circle Investments L.L.C., Tiffany Circle Partners, Diamond Roofing Company, Inc., Jeff Blumin, JB Hilltop Investments L.L.C., Kyle Blumin, KB Hoag Lane Investments, L.L.C., L. Michael Blumin, MB St. Andrews Investments, L.L.C., Fayetteville Partners, and Laurel Hollow Investors, Inc., on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

JENKENS & GILCHRIST, a Texas Professional Corporation, Jenkens & Gilchrist, an Illinois Professional Corporation, BDO Seidman, L.L.P., Pasquale & Bowers, L.L.P., Cantley & Sedacca, L.L.P., Dermody, Burke, and Brown, Certified Public Accountants, PLLC, Paul M. Daugerdas, Paul Shanbrom, Edward Sedacca, Deutsche Bank AG, and Deutsche Bank Securities, Inc., d/b/a Deutsche Bank Alex Brown, A Division of Deutsche Bank Securities, Inc., Defendants.

No. 03 Civ. 5460(SAS).

United States District Court, S.D. New York.

June 14, 2004.

David R. Deary, Ralph Canada, Shore & Deary, L.L.P., Dallas, TX, for Plaintiffs.

Douglas E. Whitney, Michael A. Pope, McDermott, Will & Emery, Chicago, IL, for Defendants Jenkens & Gilchrist and Paul Daugerdas.

Michael R. Young, Michelle Nadel, Brian A. Turetsky, Willkie Farr & Gallagher, New York, NY, for Defendants BDO Seidman and Paul Shanbrom.

Kevin E. Hulslander, Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, NY, for Defendant Pasquale & Bowers.

Lawrence M. Hill, Seth C. Farber, Dewey Ballantine, L.L.P., New York, NY, for Defendants Deutsche AG and Deutsche Bank Securities.

Kenneth A. Payment, Harter, Secrest & Emery L.L.P., Rochester, NY, for Defendant Dermody, Burke & Brown.

Todd Belous, Shari Lewis, Rivkin Radler L.L.P., Uniondale, NY, for Defendants Cantley & Sedacca and Edward Sedacca.

### MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

By Opinion & Order dated April 30, 2004 (the "April 30 Opinion"), I denied defendants' motion to compel arbitration on the ground that the contracts containing the arbitration clauses were mutually fraudulent.[1] *See Denney v. Jenkens & Gilchrist*, No. 03 Civ. 5460(SAS), 2004 WL 936843, at *6 (S.D.N.Y. Apr.30, 2004) (*"Denney I"*). I did not reach the question of whether the arbitration clauses encompassed the underlying dispute. Thereafter, all defendants other than the Jenkens and Cantley Defendants filed a notice of appeal pursuant to section 16 of the Federal Arbitration Act, 9 U.S.C. § 16. They now move to stay this action pending appeal.

Ordinarily, when a party appeals an order denying a motion to compel arbitration, the district court should stay the action pending appeal. *See In re Winimo Realty Corp.*, 270 B.R. 99, 105 (S.D.N.Y. 2001); *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 55 F.Supp.2d 231, 236 (S.D.N.Y.1999); and *Bradford–Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997). However, the posture of this action creates a unique situation that demands that this Court reach the question of the scope of the arbitration agreements before entering a stay. Specifically, defendants' pending appeal may take many months to resolve. In the event that the Court of Appeals reverses and remands *Denney I*,

this Court will be required to consider the issue of whether the arbitration agreements encompass the underlying litigation. And if the Court again refuses to compel arbitration, on the ground that the contracts do not govern this dispute, defendants will likely appeal again.

Thus, it may be two years before the parties have a final resolution from the Court of Appeals regarding whether this action is subject to arbitration. This result is untenable because such a delay will obviously prejudice plaintiffs. Moreover, two separate appeals of a single question would be a waste of resources, particularly given that the Second Circuit can easily consider both the validity of the contracts, and their scope, in a single appeal.

Under these circumstances, it would be inappropriate to grant the stay without first considering the scope of the agreements because the potential prejudice to plaintiffs is too great. Thus, before entertaining defendants' stay application, the Court must protect plaintiffs' interests by considering the scope of the arbitration agreements. Viewed together, the decisions in *Denney I* and this Memorandum Opinion & Order will allow the parties to obtain complete resolution from the Court of Appeals in a single appeal, without undue delay.

### I. FACTS

#### A. Background

The factual allegations giving rise to this litigation are set forth in detail in the April 30 Opinion, and familiarity with that opinion is presumed. In brief, plaintiffs purport to represent the class of investors who, between 1999 and 2001, engaged in a

---

1. Neither the Jenkens Defendants (Jenkens & Gilchrist, a Texas Professional Corporation, Jenkens & Gilchrist, an Illinois Professional Corporation, and Paul M. Daugerdas, collec- tively) nor the Cantley Defendants (Cantley & Sedacca, L.L.P. and Edward Sedacca, collec- tively) moved to compel arbitration.

tax strategy known as Currency Options Bring Reward Alternatives, or "COBRA." The strategy was developed by the Jenkens Defendants, and marketed by the BDO Defendants[2] to the wealthy clients of Pasquale & Bowers ("Pasquale") and Dermody, Burke, and Brown ("Dermody"). The Jenkens Defendants, and later the Cantley Defendants, wrote legal opinion letters attesting to COBRA's validity and legality. The securities transactions underlying COBRA were carried out by the Deutsche Bank Defendants,[3] with whom plaintiffs opened accounts at the recommendation of the Jenkens Defendants.

On December 27, 1999, and again in August, 2000, the IRS issued notices indicating that losses arising from COBRA-like transactions are not properly allowable for Federal income tax purposes. Nonetheless, the Jenkens Defendants and the Cantley Defendants continued to issue opinion letters stating that COBRA was a valid, legal tax strategy, and Paquale and Dermody prepared plaintiffs' tax returns utilizing the COBRA losses to offset plaintiffs' capital gains.

Plaintiffs are presently defending federal and state tax audits as a result of CO-BRA. In addition to the financial losses plaintiffs incurred in carrying out the transactions underlying COBRA, plaintiffs have incurred and will continue to incur substantial damages in the form of fees paid to attorneys and accountants retained to address the audits. Based on these facts, plaintiffs allege that defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, and are liable for damages and other relief arising from unjust enrichment, breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duties, fraud, negligent misrepresentation, professional malpractice, "unethical, excessive and illegal fees," and conspiracy.

## B. The Contracts

On October 8, 1999, plaintiff L. Michael Blumin, on behalf of Jefyle Equipment Corp., Inc., entered into a consulting agreement with BDO (the "Blumin Agreement"). The Blumin Agreement was effective through September 30, 2000, and required BDO to provide Jefyle Equipment Corporation with "assistance in financing business, real estate ventures and financing corporation activities, assistance with like kind exchanges, assistance with leasing transaction issues, assistance in planning the Expansion, and assisting [Jefyle Equipment Corp.] and/or its advisors in determining tax treatments of the transactions associated with the Expansion." Consulting Agreement between BDO and Jefyle Equipment Corp., Ex. 4 to the Affidavit of Michael R. Young ("Young Aff."), counsel to the BDO Defendants, ¶ 2.

On October 12, 1999, Thomas Denney, R. Thomas Weeks, Norman R. Kirisits, and BDO executed a consulting agreement (the "Denney Agreement"). The Denney Agreement expired on December 31, 1999, and required BDO to provide consulting services, include tax treatment advice, in connection with Denney's, Weeks's, and Kirisits's transfer of their business operations, "by sale, lease or otherwise." Consulting Agreement between BDO and Denney, Weeks, and Kirisits, Ex. 2 to the Young Aff., at "whereas" clauses and ¶ 2.

Finally, on November 2, 1999, plaintiff Diamond Roofing Co., Inc. entered into a consulting agreement with BDO (the "DeStefano Agreement"). The DeStefano Agreement was effective through Septem-

---

**2.** The BDO Defendants are BDO Seidman, L.L.P. and Paul Shanbrom.

**3.** The Deutsche Bank Defendants are Deutsche Bank AG and Deutsche Bank Securities, Inc.

ber 30, 2000, and required BDO to provide services to Diamond Roofing Company in connection with the expansion of its business operations. Specifically, BDO was to provide the same services to Diamond Roofing Company that it was providing to Jefyle Equipment Corporation pursuant to the Blumin Agreement. *See* Consulting Agreement between BDO and Diamond Roofing Co., Inc., Ex. 3 to the Young Aff., at "whereas" clauses and ¶ 2.

All three agreements contained identical, mandatory arbitration clauses:

> If any dispute, controversy or claim arises in connection with the performance or breach of this Agreement and cannot be resolved by facilitated negotiations (or the parties agree to waive that process) then such dispute, controversy or claim shall be settled by arbitration in accordance with the laws of the State of New York, and the then current Arbitration Rules for Professional Accounting and Related Disputes of the American Arbitration Association ("AAA") except that no pre-hearing discovery shall be permitted unless specifically authorized by the arbitration panel, and shall take place in the city in which the BDO office providing the relevant Services exists, unless the parties agree to a different locale.

Blumin Agreement ¶ 7(d); Denney Agreement ¶ 8(d); DeStefano Agreement ¶ 7(d).

## C. The April 30 Opinion

In support of their motion to compel arbitration, defendants argued that the consulting agreements were entered into in connection with plaintiffs' COBRA transactions, and that the mandatory arbitration clauses therefore required plaintiffs to arbitrate their claims. Plaintiffs countered by arguing that the plain language of the contracts makes clear that the agreements govern consulting services wholly unrelated to COBRA.

In the course of considering the parties' arguments, I asked counsel for BDO and counsel for plaintiffs whether BDO provided consulting services to plaintiffs for anything other than COBRA. *See* 3/14/04 Transcript ("Tr.") at 6. Counsel for both BDO and plaintiffs acknowledged that the only work BDO did on plaintiffs' behalf was in connection with COBRA. Moreover, counsel informed the Court that although the Blumin and DeStefano Agreements obligated BDO to assist Jefyle Equipment and Diamond Roofing, respectively, with their expansions, BDO provided no such services. Similarly, though the Denney Agreement stated that BDO would assist Denney, Weeks, and Kirisits with the transfers of their businesses, the transfers had already occurred at the time the Denney Agreement was executed, and BDO provided no work in connection with those transfers. *See id.* at 6, 10.

Based on these facts, I concluded that the agreements between BDO and plaintiffs were mutually fraudulent because they were intended to conceal the nature of the work that BDO was performing, and described work that was never performed and that the parties never intended be performed. *See Denney I*, 2004 WL 936843, at *6. Because the contracts are mutually fraudulent, the arbitration clauses contained therein cannot be enforced. Having concluded that the contracts were invalid, I did not address whether the arbitration clauses contained therein encompass plaintiffs' underlying claims.

## II. DISCUSSION

### A. Scope of the Arbitration Clauses

#### 1. Legal Standard

The determination of whether a dispute is arbitrable under the FAA comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the

contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Acc. and Indem. Co. v. Swiss Reinsurance Amer. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quoting *National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir.1996)). In *Denney I*, I concluded that no valid agreement to arbitrate exists between plaintiffs and BDO. However, for the reasons set forth above, *see supra* Part II.A, I will assume, *arguendo*, that the agreement is valid, and address whether the parties' underlying dispute falls within the scope of the arbitration agreements.

Because there is "a strong federal policy favoring arbitration ... doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir.2002) (internal quotation marks and citations omitted). Although federal policy favors arbitration, the Federal Arbitration Act has been interpreted to require consent before a party can be compelled to arbitrate. "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

The Second Circuit has established a three-part inquiry for determining whether a particular dispute falls within the scope of the arbitration agreement. *See id. First,* "a court should classify the particular clause as either broad or narrow." *Id. Second,* if the clause is narrow, "the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (quoting *Rochdale Vill., Inc. v. Public Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979)). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Id. Third,* if the arbitration clause is broad, " 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.' " *Id.* (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). "In the end, a court must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." *Id.* at 225.

### 2. The Arbitration Clauses Do Not Encompass the Underlying Dispute

The language of the arbitration clauses is broad because it covers "any dispute, controversy or claim [that] arises in connection with the performance or breach of this Agreement." However, this dispute is not subject to arbitration because plaintiffs' allegations *do not arise in connection with the performance or breach of the contracts.* While broad arbitration clauses create a presumption of arbitrability and subject collateral matters to arbitration, the underlying dispute here is wholly unrelated to the obligations encompassed by the contracts, and does not constitute even a collateral matter. Specifically, the plain language of the contracts demonstrates that certain plaintiffs (as well as at least

one non-party) retained BDO to provide consulting services in connection with Jefyle Equipment's and Diamond Roofing's expansions, and the sale or transfer of businesses owned by Denney, Weeks, and Kirisits. Nothing contained in the contracts relates to BDO advising plaintiffs with respect to tax shelters, foreign investments, and accounting.[4] Indeed, the Blumin Agreement was made with Jefyle Equipment Corporation, non-party, and the effective dates of all three of the contracts do not correspond to the time periods during which BDO provided consulting advice regarding tax shelters to plaintiffs.

Is essence, defendants seek to apply the arbitration clauses to a dispute that arises entirely outside the scope of the agreements. While the plaintiffs who signed the written agreements consented to arbitrate disputes arising from the services provided pursuant to the contracts, they did not agree to arbitrate disputes generated by other, unrelated services. Because the underlying action arises from unrelated services, plaintiffs cannot be compelled to arbitrate. *See Louis Dreyfus*, 252 F.3d at 224; *see also Lewis v. New Jersey Sports Productions, Inc.*, No. 02 Civ. 6505 SAS, 2003 WL 1090279 (S.D.N.Y. Mar.12, 2003) (arbitration clause contained in one agreement cannot be applied to conduct encompassed by a separate agreement where agreement covering the disputed conduct contains no arbitration clause).

### C. The Stay Application

Having addressed the validity of the contracts in *Denney I*, and the scope of the arbitration clauses contained in the agreements in this Memorandum Opinion & Order, I have sufficiently protected plaintiffs'

interest in avoiding undue delay during the appeal, and a stay is warranted. Therefore, for the reasons set forth in *In re Winimo Realty Corp.*, 270 B.R. at 105; *Satcom Int'l*, 55 F.Supp.2d at 236; and *Bradford–Scott Data Corp.*, 128 F.3d at 505, defendants' motion for a stay is granted.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to stay is granted. This action is stayed with respect to all defendants other than Jenkens & Gilchrist, a Texas Professional Corporation, Jenkens & Gilchrist, an Illinois Professional Corporation, and Paul M. Daugerdas during the pendency of defendants' appeal.

SO ORDERED.

---

4. Because the Blumin, Denney, and DeStefano Agreements are the only written agreements that were submitted to the Court, I assume that no other written agreements exist. Thus, it appears that the work BDO did for plaintiffs in connection with COBRA was done pursuant to oral agreements, which of course contain no arbitration clauses.