*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENNIS LEE TOMASIK,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN,

        Defendant-Appellee.

FOR PUBLICATION
April 25, 2019
9:00 a.m.

No. 343453
Court of Claims
LC No. 17-000264-MZ

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

SWARTZLE, P.J.

A jury convicted plaintiff Dennis Lee Tomasik of sexual assault, but following reversal by our Supreme Court, plaintiff received a new trial and was acquitted. Plaintiff sued the state of Michigan under the Wrongful Imprisonment Compensation Act, but the Court of Claims determined that he was not eligible for compensation because the Supreme Court's reversal was not based on new evidence. He challenges this holding, and thus we are faced with the question of whether plaintiff has satisfied all of the conditions for relief under the act?

This seemingly straightforward question implicates principles of separation of powers, law of the case, expression of judicial holdings, and judicial immunity. As explained, we conclude that the Legislature and Supreme Court both meant what they plainly said, and this is fatal to plaintiff's claim for relief.

## I. BACKGROUND

Plaintiff sued the state of Michigan for compensation under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq.* The underlying criminal case has a lengthy appellate history, including three decisions of this Court and three decisions of our Supreme Court. Because resolution of this appeal hinges in part on whether new evidence resulted in the Supreme Court's reversal of plaintiff's criminal conviction, we will discuss the criminal case in detail. For clarification, although plaintiff was a "defendant" in the underlying criminal case, we refer to him as "plaintiff" even when discussing the criminal case.

-1-

## A. FIRST CRIMINAL TRIAL AND APPEAL

In 2007, plaintiff first stood trial for allegedly committing repeated acts of sexual assault against a minor, T.J. At trial, T.J. claimed that plaintiff sexually assaulted him approximately eight years earlier, when T.J. was six years old. The jury convicted plaintiff of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a), and the trial court sentenced him to serve concurrent terms of 12 to 50 years in prison.

During pretrial, plaintiff had sought disclosure or *in-camera* review of "any and all" of T.J.'s counseling records. Plaintiff asserted that T.J. had been in counseling since the age of five and had seen approximately eight counselors over the years. Plaintiff also asserted that when T.J. was 11, the latter had acted out sexually against a cousin. The trial court granted the motion in part, but limited the discovery to a one-year period related to the alleged sexual activity with the cousin. *People v Tomasik*, unpublished per curiam opinion of the Court of Appeals, issued January 26, 2010 (Docket No. 279161), pp 11-12.

After his convictions, plaintiff appealed to this Court and, as part of his appeal, moved for a remand to the trial court for a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). The Court granted his motion and ordered the trial court to conduct an evidentiary hearing "to determine whether trial counsel rendered ineffective assistance of counsel when he failed to produce expert evidence to rebut the prosecutor's experts and failed to call [plaintiff] as a witness on his own behalf." *People v Tomasik*, unpublished order of the Court of Appeals, entered November 6, 2008 (Docket No. 279161).

While awaiting the *Ginther* hearing, plaintiff moved the trial court for a new trial and for disclosure of "any and all" of T.J.'s counseling records. The trial court denied the motion for a new trial, but it agreed to conduct an *in-camera* review of some of the counseling records. The trial court limited its review to those counseling records related to T.J.'s purported sexual activity with the cousin. After its review, the trial court denied disclosure of the records, and it further declined to review any other counseling records. The trial court held a *Ginther* hearing and concluded that trial counsel did not render ineffective assistance of counsel.

The case then returned to this Court for decision. Plaintiff made several claims on appeal, including: (1) the trial court erroneously admitted a recording of a police detective's statements that expressed an opinion of plaintiff's guilt and vouched for the victim's credibility; and (2) the trial court erroneously refused to conduct an *in-camera* review of all of T.J.'s counseling records. *Tomasik* at 2-15. On the question of counseling records, the Court reviewed the trial court's decision under the standard articulated in *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994). The Court affirmed the trial court's decision with respect to the counseling records, reasoning: "Given that [plaintiff] wanted the trial court to review all of T.J.'s counseling records and to disclose any evidence which could possibly suggest a false allegation by T.J., the trial court's decision that [plaintiff] was on a 'fishing expedition' fell within the range of reasonable and principled outcomes." *Id*. at 15. The Court rejected the other arguments and affirmed plaintiff's convictions. *Id*.

On application for leave to appeal, our Supreme Court vacated the judgment of this Court and remanded the case to the trial court for further proceedings under *Stanaway*. The order of

remand specifically stated that "the trial court shall disclose to the [plaintiff] the March 26, 2003 report authored by Timothy Zwart of Pine Rest Christian Mental Health Services and the March 1, 2003 form authored by Denise Joseph-Enders. After disclosing these documents to the [plaintiff], the trial court shall permit the [plaintiff] to argue that a new trial should be granted." *People v Tomasik*, 488 Mich 1053; 794 NW2d 620 (2011).

## B. REMAND AND SUBSEQUENT APPEALS

On remand, the trial court disclosed to plaintiff the documents identified in the Supreme Court's 2011 order. Plaintiff then filed a motion for new trial, the trial court denied the motion, and plaintiff appealed. This Court described the new evidence that formed the basis of the motion for new trial, as well as the trial court's rationale for denying it:

> In this case, the records that were not disclosed to [plaintiff] during trial are a March 26, 2003 report authored by Zwart, and a March 1, 2003 form authored by Joseph-Enders. The report authored by Zwart indicated that T.J. lied consistently and relished doing so, was quick to blame adults when he got into trouble, and had difficulty with impulse control. It also indicated that T.J. appeared to believe some of his untruthful statements. The form completed by Joseph-Enders indicated that T.J. was deceitful and had had difficulties telling the truth for some time. It is not disputed that the documents not initially disclosed to [plaintiff] were favorable to his case. In this case, the trial court denied [plaintiff's] motion for a new trial because it determined that even if the documents were to have been disclosed to [plaintiff] during trial, the documents were not material because no reasonable probability existed that the result would have been different if the documents were disclosed to [plaintiff] during trial. We agree.
>
> * * *
>
> The evidence presented at trial demonstrated that T.J. was a troubled child who engaged in theft and deceit and had difficulty distinguishing fantasy from reality. [Plaintiff's] assertion that the information in the documents was different in kind than the evidence presented at trial is without merit. At trial, defense counsel pointed to evidence that showed that T.J. could not distinguish fantasy from reality, including reminding the jury that T.J. admitted during his testimony that he thought Batman was real, that T.J. lied, and that T.J. previously denied that he was sexually abused and disclosed the abuse only after he was charged with theft. [*People v Tomasik (After Remand)*, unpublished per curiam opinion of the Court of Appeals, issued November 29, 2011 (Docket No. 279161), pp 4-5, vacated in part, lv den in part 495 Mich 887 (2013).]

This Court concluded that the new evidence was "cumulative to the evidence presented during the trial" and that the documents "were not material because there is not a reasonable probability of a different result if the documents would have been disclosed to [plaintiff] during trial." *Id*. at 5. On the remaining claims, the Court adopted the reasoning of its original opinion in *Tomasik* and affirmed plaintiff's convictions and sentence. *Id*. at 5-6.

Plaintiff again sought leave to appeal with our Supreme Court. Rather than granting leave, the Supreme Court vacated in part the judgment of this Court. In doing so, it further ordered:

> We REMAND this case to the Court of Appeals for reconsideration, in light of *People v Musser*, 494 Mich 337, 835 NW2d 319 (2013), *People v Kowalski*, 492 Mich 106, 821 NW2d 14 (2012), and *People v Grissom*, 492 Mich 296, 821 NW2d 50 (2012), of the following issues: (1) whether the Kent Circuit Court erred by admitting the entire recording of the [plaintiff's] interrogation; (2) whether the circuit court erred in admitting Thomas Cottrell's expert testimony regarding Child Sexually Abusive Accommodation Syndrome under current MRE 702, and, if so, whether the error was harmless; (3) whether the circuit court erred in denying the [plaintiff's] motion for a new trial based on the newly disclosed impeachment evidence of the March 26, 2003 report authored by Timothy Zwart and the March 1, 2003 form completed by Denise Joseph–Enders; and (4) whether the [plaintiff's] trial counsel was ineffective by failing to object to the admission of the [plaintiff's] entire interrogation, by failing to object to Thomas Cottrell's testimony, and by failing to procure the expert testimony of Jeffrey Kieliszewski to challenge the testimony of Thomas Cottrell. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*People v Tomasik*, 495 Mich 887; 839 NW2d 194 (2013).]

On second remand, this Court again affirmed plaintiff's convictions and sentences. *People v Tomasik (On Second Remand)*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2014 (Docket No. 279161), rev'd in part 498 Mich 953 (2015). In that decision, the panel considered whether the trial court abused its discretion by denying plaintiff's motion for a new trial "based on newly discovered impeachment evidence." *Id*. at 12. The Court concluded that the trial court had not abused its discretion:

> On remand, [plaintiff] argues that the disclosed reports, which established that T.J. lied on a consistent basis, seemed to believe his lies, and blamed others for his behavior, particularly adults, would have had a significant impact on the jury's deliberations, and likely would have resulted in a different verdict.

> We again conclude that the newly discovered evidence did not support a new trial. *Grissom* establishes that a new trial may be granted on the basis of impeachment evidence. However, in this case, "a material, exculpatory connection [does not] exist between the newly discovered evidence and significantly important evidence presented at trial." See *Grissom*, 492 Mich at 300. This case came down to a credibility contest between [plaintiff] and T.J. The reports at issue present additional evidence that T.J. was a habitual liar, but the jury received ample evidence to that effect and still chose to find T.J.'s allegations against [plaintiff] credible. We hold that the newly discovered evidence did not entitle [plaintiff] to a new trial. [*Id*. at 13-14.]

As the panel noted, the first trial amounted to a "credibility contest" between plaintiff and T.J. Plaintiff had several witnesses testify on his behalf and, while he did not testify on his own behalf, the jury heard the unredacted interview plaintiff had with police, during which plaintiff made repeated, forceful denials of any wrongdoing involving T.J.

After being denied relief, plaintiff filed a third application for leave to appeal with the Supreme Court. In that application, plaintiff raised several issues: (1) the trial court erroneously admitted the entire recording of plaintiff's interrogation into evidence; (2) the trial court erroneously admitted expert testimony regarding child-sexual-abuse-accommodation-syndrome into evidence; and (3) the trial court erroneously denied plaintiff's motion for new trial based on newly discovered evidence. The new evidence that plaintiff described in its application for leave to appeal was T.J.'s "treatment and educational records," i.e., the Zwart report and the Joseph-Enders form and questionnaire.

The Supreme Court granted the application for leave to appeal and directed that the parties brief the following issues:

> On order of the Court, the application for leave to appeal the April 22, 2014 judgment of the Court of Appeals is considered, and it is GRANTED. The parties shall include among the issues to be briefed: (1) whether the Kent Circuit Court erred by admitting the entire recording of the [plaintiff's] interrogation in light of *People v Musser*, 494 Mich 337 (2013), and, if so, whether admission of the evidence amounted to plain error; (2) whether the trial court erred in admitting Thomas Cottrell's expert testimony regarding child sexual abuse accommodation syndrome under current MRE 702, and *People v Kowalski*, 492 Mich 106 (2012), and, if so, whether admission of the testimony amounted to plain error; and (3) whether the trial court erred in denying the [plaintiff's] motion for a new trial based on the newly disclosed impeachment evidence of the March 26, 2003 report authored by Timothy Zwart and the March 1, 2003 form completed by Denise Joseph-Enders in light of *People v Grissom*, 492 Mich 296 (2012). [*People v Tomasik*, 497 Mich 977; 860 NW2d 620 (2015).]

Consistent with the order granting leave to appeal, the new evidence that plaintiff described in his brief was the "two critical counseling records," i.e., the Zwart report and the Joseph-Enders form and questionnaire.

Our Supreme Court held oral argument on the application and subsequently issued an order reversing this Court's judgment in part and remanding the case back to the trial court for a new trial. *People v Tomasik*, 498 Mich 953; 872 NW2d 488 (2015). Because the grounds on which the Supreme Court granted plaintiff a new trial are critical to resolution of plaintiff's appeal in this case, we include the decision here in full:

> On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we REVERSE in part the April 22, 2014 judgment of the Court of Appeals and we REMAND this case to the Kent Circuit Court for a new trial. The trial court abused its discretion by admitting the recording of the [plaintiff's] interrogation.

See *People v Musser*, 494 Mich 337; 835 NW2d 319 (2013). Because nothing of any relevance was said during the interrogation, it was simply not relevant evidence, and thus was not admissible evidence. See MRE 401. The admission of this evidence amounted to plain error that affected the [plaintiff's] substantial rights and seriously affected the fairness, integrity or public reputation of judicial proceedings. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In a trial in which the evidence essentially presents a 'one-on-one' credibility contest between the complainant and the [plaintiff], the prosecutor cannot improperly introduce statements from the investigating detective that vouch for the veracity of the complainant and indicate that the detective believes the [plaintiff] to be guilty. On retrial, if the parties seek to admit expert testimony, the trial court shall conduct a *Daubert* hearing to ensure that the proposed testimony is both relevant and reliable as is required under MRE 702. See *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). In light of this disposition, we decline to address the other issues presented in our order granting leave to appeal. [*Id.*]

Plaintiff was retried in the Kent Circuit Court, before the same judge who presided over his first criminal trial. Plaintiff recalls that the jury in the retrial "heard from 22 witnesses who had never been spoken to or called in the first trial" and saw several new exhibits that were not presented earlier. The jury unanimously acquitted plaintiff of all charges. Plaintiff was released from prison on March 3, 2016, after 8 years, 11 months, and 3 days of imprisonment.

## C. THE COURT OF CLAIMS

After his acquittal, plaintiff sued the state in the Court of Claims, seeking compensation under the WICA. In lieu of filing an answer, the state filed a motion for summary disposition under MCR 2.116(C)(7) (claim barred by immunity granted by law). The Court of Claims granted summary disposition to the state under MCR 2.116(C)(10) (no genuine issue of material fact). The Court of Claims held that plaintiff did not satisfy the conditions for relief under Section 5 of the WICA, MCL 691.1755, because our Supreme Court granted plaintiff a new trial on grounds other than new evidence.

Plaintiff appealed.

## II. ANALYSIS

On appeal, plaintiff argues that the Court of Claims erred in dismissing his action in three separate ways. First, the Court of Claims misread the WICA to require that a plaintiff prove by clear and convincing evidence that, among other things, the conviction was reversed or vacated based on "new evidence," as that term is defined in the act. As plaintiff reads the act, it is enough to show that new evidence ultimately resulted in a finding of not guilty, and the earlier reversal or vacation of the prior conviction can be on a basis other than new evidence. Second, even if the Court of Claims read the act correctly, plaintiff argues that his convictions were, in fact, reversed based on new evidence, and it is a misreading of the Supreme Court's order to conclude otherwise. Third and finally, plaintiff asserts that if there is question about what the

Supreme Court's order meant, then he should be allowed to take discovery on the matter, including deposing Justices and judicial staff.

Each of these arguments is without merit.

## A. STANDARDS OF REVIEW AND STATUTORY CONSTRUCTION

This Court reviews de novo the Court of Claim's decision on summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is appropriate under MCR 2.116(C)(10) when, except as to damages, "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

This Court also reviews de novo questions of statutory construction. *People v Morey*, 461 Mich 325, 329; 603 NW2d 250 (1999). Based on several considerations, including the principle of separation of powers, the Court must give effect to the Legislature's intent. *Van Buren Co Ed Ass'n v Decatur Pub Sch*, 309 Mich App 630, 643; 872 NW2d 710 (2015). "The Legislature is presumed to intend the meaning clearly expressed, and this Court must give effect to the plain, ordinary, or generally accepted meaning of the Legislature's terms." *D'Agostini Land Co LLC v Dep't of Treasury*, 322 Mich App 545, 554; 912 NW2d 593 (2018) (citation omitted). "A statutory provision is ambiguous only if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *People v Fawaz*, 299 Mich App 55, 63; 829 NW2d 259 (2012) (quotation marks and citation omitted). "Only when ambiguity exists does the Court turn to common canons of construction for aid in construing a statute's meaning." *D'Agostini Land*, 322 Mich App at 554-555.

## B. REQUIREMENTS FOR COMPENSATION UNDER THE WICA

The Legislature enacted the WICA with the stated intention of "provid[ing] compensation and other relief for individuals wrongfully imprisoned for crimes." 2016 PA 343. While plaintiff certainly fits within the set of "individuals wrongfully imprisoned for crimes," the Legislature created a narrower subset of wrongfully imprisoned individuals who actually qualify for compensation. In other words, not all exonerated individuals are eligible for compensation under the WICA.

To qualify for compensation, Section 5 of the WICA requires that an individual show the following by clear and convincing evidence:

(a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.

(b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. However, the plaintiff is not entitled to compensation under this act if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial.

(c) New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial. [MCL 691.1755(1).]

These are relatively stringent conditions for relief. If, for example, an individual's conviction is overturned on appeal, and the individual is subsequently acquitted on something other than new evidence—for example, a coerced confession in the first trial is precluded in the second—then that individual has no recourse under a fair reading of the WICA. Similarly, if an individual is acquitted of a serious charge but remains convicted of a relatively minor charge "arising from the same transaction," then that individual also has no recourse under the act, even if he could make a plausible argument that he was somehow *mostly* wrongfully imprisoned. These and other examples illustrate that not all exonerated individuals are entitled to compensation under the act.

In this case, whether plaintiff fits within the subset of exonerated individuals who are eligible for compensation depends on the meaning of Subdivision (c) above. Broken out, the subdivision requires that plaintiff prove that "New evidence":

- "demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction,"

- "results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and"

- "results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial."

Grammatically, there is no ambiguity in this statutory language. The noun phrase "new evidence" precedes a series of parallel clauses, each clause beginning with a parallel verb ("demonstrates," "results," and "results"), joined together by the coordinate conjunction "and." The noun phrase is the subject of each of the parallel verbs in Subdivision (c), and the language is structured as a syndeton, where all of the conjuncts (i.e., the three parallel clauses) must be satisfied for the test to be met. Thus, as a matter of straightforward grammar, Subdivision (c) requires an exonerated individual to prove each of the following: (i) new evidence shows that the individual did not commit the crime or participate as an accomplice or accessory; (ii) new evidence results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon; *and* (iii) new evidence results in dismissal of the charges or a finding of not guilty after retrial.

Plaintiff does not dispute that the subdivision says this. Instead, plaintiff takes a different tack and argues that, when compared to similar language in the immediately preceding section, an ambiguity arises. Specifically, Section 4 sets out the pleading requirements to initiate an action for WICA compensation. A plaintiff must file a verified complaint, and attached to that complaint, the plaintiff must include, among other things, documentation of the following:

New evidence demonstrates that the plaintiff was not the perpetrator of the crime or crimes and was not an accessory or accomplice to the acts that were the basis of the conviction and resulted in a reversal or vacation of the judgment of conviction, dismissal of the charges, finding of not guilty, or gubernatorial pardon. [MCL 691.1754(1)(c).]

While similar to its counterpart in Section 5, this Subdivision (c) in Section 4, Subsection (1) is different in several material respects. Relevant here, the subdivision requires that a plaintiff attach documentation showing that "New evidence . . . resulted in a reversal or vacation of the judgment of conviction, dismissal of the charges, finding of not guilty, or gubernatorial pardon." This time, the parallel phrases are separated by the coordinate conjunction "or," the conjunction that creates alternatives, where the satisfaction of any one of the conditions will be sufficient to meet the test. Thus, again as a matter of straightforward grammar, a plaintiff must attach to the verified complaint proof that new evidence resulted in at least one of the following: (i) reversal or vacation of the judgment; (ii) dismissal of the charges; (iii) finding of not guilty; *or* (iv) a gubernatorial pardon. Plaintiff does not dispute this reading either.

Where plaintiff takes issue is in reconciling the two provisions. Specifically, plaintiff argues that the two subdivisions cannot be reconciled, this creates an irreconcilable ambiguity, and because the WICA is intended to compensate those exonerated at trial, any ambiguity should inure to the benefit of exonerated individuals, not the state. In plaintiff's eyes, to obtain relief under the WICA, the individual must show only that "the new evidence must have resulted in a reversal or vacation of the judgment of conviction, *or* dismissal of the charges *or* a finding of not guilty *or* gubernatorial pardon."

We need not reach the equities of what should inure to whom, as there is no ambiguity in the statute in the first instance. As set forth above, each provision makes grammatical sense when considered in isolation, and plaintiff does not dispute this. Moreover, when read as a whole, *Potter v McLeary*, 484 Mich 397, 411; 774 NW2d 1 (2009), each provision continues to make grammatical sense, as each provision is part of a section with a separate and distinct purpose. Section 4 sets forth requirements for pleading, while Section 5 sets forth requirements for relief.

On the one hand, it is commonplace to set a relatively low bar for the initial pleading stage, MCR 2.111(B), when notice pleading and key documents are typically sufficient to survive summary disposition under MCR 2.116(C)(8). A plaintiff will not typically have all of the evidence readily at-hand when filing a complaint, hence the opportunity for depositions, interrogatories, requests for admission, and other fact discovery in the mine-run of cases. See MCR 2.301 through MCR 2.316. On the other hand, to obtain relief, notice pleading and a key document are usually not enough. Rather, a plaintiff must present sufficient, reliable evidence on each of the elements of a claim, as well as evidence countering any affirmative defenses. Given this, it was reasonable for the Legislature to have intended to require more at the relief stage than at the pleading stage.

Plaintiff disagrees and asserted at oral argument that because the grounds for the original reversal or vacation and subsequent exoneration must be known to the individual at the time of filing a WICA action, it does not make sense to have requirements for pleading different than

those for relief. This argument is belied by plaintiff's request for discovery in this case, see *infra* Part II.D, as well as the observation that ours is a traditional notice-pleading jurisdiction. At base, plaintiff's argument is one grounded in public policy, and such argument is best made before the Legislature rather than the Judiciary. *Johnson v Recca*, 429 Mich 169, 187, 196-197; 821 NW2d 520 (2012); *D'Agostini Land*, 322 Mich App at 560. Frankly, it is unremarkable that the Legislature would use different language to express different meanings in different sections intended for different purposes.

## C. NEW EVIDENCE

Plaintiff argues in the alternative that even if the WICA requires that the reversal be based on new evidence rather than some other reversible error, he has met this requirement. We turn, therefore, to the Supreme Court's written order of reversal.

Before considering the order, plaintiff asks that we review the oral argument and glean the Supreme Court's rationale for reversing his convictions from the questions asked of the parties as well as the arguments the parties made. The record of a case can certainly provide much-needed context to a dispute, as the "BACKGROUND" section of this opinion illustrates. With that said, it is a well-settled proposition that "a court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Plaintiff cites no appellate authority for the proposition that a court speaks through the questions that it asks of the parties during oral argument, let alone through the argument made by the parties during oral argument. We decline plaintiff's invitation to extend the law in this manner.

When our Supreme Court granted plaintiff's application for leave to appeal, it directed that the parties brief three issues. The third issue was "whether the trial court erred in denying the [plaintiff's] motion for a new trial based on the newly disclosed impeachment evidence of the March 26, 2003 report authored by Timothy Zwart and the March 1, 2003 form completed by Denise Joseph-Enders in light of *People v Grissom*, 492 Mich 296 (2012)." *Tomasik*, 497 Mich at 977. Thus, the question whether plaintiff was entitled to a new trial on grounds of "new evidence" was fairly before the Supreme Court.

Yet, the Supreme Court did not direct plaintiff to brief any and all "new evidence" that plaintiff might choose to identify. The Supreme Court restricted plaintiff to addressing whether the two specific items of newly disclosed evidence required the grant of a new trial. On appeal in this case, plaintiff attempts to argue a vastly larger universe of "new evidence" that was never referenced by our Supreme Court in its order granting leave to appeal. Plaintiff attempts to include in his argument the testimony of 22 witnesses and several new exhibits that were shown to the jury for the first time on retrial. This other new evidence, however, was not the basis of plaintiff's motion for a new trial in the circuit court, nor was it the basis of plaintiff's multiple appeals and applications for leave to appeal in the Supreme Court.

Even assuming that this other new evidence had been the basis of plaintiff's various appeals and applications, it was not the basis of the reversal of his convictions, and this is the critical phase for purposes of his WICA claim. In its order granting plaintiff's motion for a new trial, the Supreme Court plainly stated that a new trial was warranted because the "trial court

abused its discretion by admitting the recording of the [plaintiff's] interrogation." *Tomasik*, 498 Mich at 953. The Supreme Court further specified, "we decline to address the other issues presented in our order granting leave to appeal." *Id.* Plaintiff simply cannot prove—let alone prove by clear and convincing evidence—that new evidence resulted in the reversal of his convictions.

Plaintiff asks us to read between the lines of the Supreme Court's order. According to this reading, even if the Supreme Court did not expressly state in its order that new evidence entitled plaintiff to a second trial, the Supreme Court must have based its order on that ground because a "*Musser* error" does not automatically entitle a party to a new trial. True, a *Musser* error—when an officer impermissibly expresses an opinion of guilt and vouches for the complainant's credibility—is not a structural constitutional error and, therefore, reversal is not automatic. *Musser*, 494 Mich at 348, 363. But such error can rise (and has risen) to the level of plain error affecting a criminal defendant's substantial rights—i.e., reversible error. See *id.* at 365-366. Moreover, as an intermediate appellate court reviewing an earlier higher court ruling, we are bound by principles of law of the case and judicial hierarchy to follow the plain meaning of the Supreme Court's order. See, e.g., *People v Eliason*, 300 Mich App 293, 312; 833 NW2d 357 (2013); *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001); *Rodriguez v Grand Trunk W R Co*, 120 Mich App 599, 603 n 3; 328 NW2d 89 (1982). Plaintiff's argument, that our Supreme Court must have necessarily relied on the new evidence discussed by plaintiff's counsel at oral argument when it granted plaintiff a new trial, is without merit.

## D. REMAND FOR DISCOVERY

Finally, plaintiff requests that this Court vacate the opinion and order issued by the Court of Claims and remand the case for discovery. Plaintiff maintains that discovery could confirm that the Supreme Court did, in fact, reverse plaintiff's convictions based on new evidence, notwithstanding what the Supreme Court expressed in its written order.

The WICA does provide that the "plaintiff, the attorney general, and the prosecuting attorney for the county in which the plaintiff was convicted may conduct discovery in an action under this act." MCL 691.1754(5). Standing against this is the proposition that no party has an absolute right to conduct whatever discovery the party wants, especially when the record as it stands confirms that no amount of discovery could create a genuine issue of material fact. See, e.g., MCR 2.302(C); *Caron v Cranbrook Ed Community*, 298 Mich App 629, 645; 828 NW2d 99 (2012); *Marketos v American Employers Ins Co*, 185 Mich App 179, 197-198; 460 NW2d 272 (1990).

The Supreme Court's order plainly held that the Court would not address whether the trial court erred in denying plaintiff a second trial based on newly discovered evidence. No amount of discovery could alter or enlighten this written holding. In any event, plaintiff's suggestion that discovery could be had from judicial officers and their staff, past and present, on matters of judicial decisionmaking fails under centuries of precedent. As explained by the federal district court in *Bliss v Fisher*, 714 F Supp 2d 223, 224 (D Mass, 2010) (cleaned up), "The overwhelming authority . . . makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties." See also *United States v Morgan*, 313

US 409, 422; 61 S Ct 999; 85 L Ed 1429 (1941); *Fayerweather v Ritch*, 195 US 276, 307; 25 S Ct 58; 49 L Ed 193 (1904); *Robinson v Commissioner of Internal Revenue*, 70 F3d 34, 38 (CA 5, 1995); *In re Lickman*, 304 BR 897, 903-904 (Bankr MD Fla, 2004).

## III.  CONCLUSION

Pleading a case under the WICA is different than winning one.  To obtain relief, an exonerated individual must prove, among other things, that the conviction was reversed or vacated on the basis of new evidence.  Because plaintiff cannot show this, the Court of Claims appropriately granted summary disposition to the state of Michigan, and we affirm.


/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron